. Syllabus.

# IN THE MATTER OF THE CLAIM FOR COMPENSATION OF ICHIJIRO IKOMA AGAINST OAHU SUGAR COMPANY, LIMITED, AND KENICHI HARUMI.

## No. 924.

RESERVED QUESTION FROM INDUSTRIAL ACCIDENT BOARD, CITY AND COUNTY OF HOUOLULU.

ARGUED MAY 2, 1916.                    DECIDED MAY 22, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

STATUTES—*Workmen's Compensation Act—construction.*

> One purpose of the Workmen's Compensation Act is to provide compensation to a workman for injuries received while working in the business of the owner or operator thereof, from such owner or operator, regardless of questions of negligence, whether the injured workman is employed directly by the owner or operator of the business, or indirectly through a contractor, and the act must be broadly and liberally construed in order to effectuate such purpose.

SAME—*same—same.*

> A sugar company let a contract to H to build a road-bed on its plantation to be used in its business, furnishing H with camps, tools and appliances, the work to be to the satisfaction of the company's engineer; the claimant, a workman employed by H who alone had the right to discharge him, was injured while working on the road-bed and filed with the industrial accident board his claim for compensation against the company and H; the question of the liability of the company was reserved to this court: Held, that the company is liable, it being an employer of claimant within the language and intent of the act.

### OPINION OF THE COURT BY QUARLES, J.

#### (Robertson, C.J., dissenting.)

The claimant presented his notice of injury and claim for compensation under the Workmen's Compensation Act

to the industrial accident board of the city and county of Honolulu against the Oahu Sugar Company, Limited, and Kenichi Harumi stating the nature and cause of injury as follows: "Total loss of the sight of the right eye, caused by a chip of iron from a drill entering the eye, while he was engaged in drilling for blasting purpose, the said Ichijiro Ikoma being at the time of the accident in the employment of Kenichi Harumi, an independent contractor, who was then carrying out a contract with the said Oahu Sugar Company, Limited, said drilling work being part of the work required and provided for by said contract. The undersigned therefore claims compensation under the provisions of the Workmen's Compensation Act." To the said claim the Oahu Sugar Company, Limited (for convenience sake hereinafter called the company), filed its answer wherein it appears that said company entered into a contract with the said Harumi on the 10th day of July, 1915, for the construction of a road-bed in Kipapa gulch, the company to furnish camps, tools and appliances, the said Harumi to pay for the powder, fuse and caps at cost thereof to the company. The amount of work was small, consisting of 4300 cubic yards, for which said Harumi was to receive sixty cents per yard. By the terms of the contract the work was to be done to the satisfaction of the company's engineer. The answer alleges that the claimant was employed and paid for his work by the said Harumi, who alone had the right to discharge him, claimant receiving $1.25 per day. By the contract the work was to be done according to specifications set forth therein and pursuant to a survey and grade stakes on the ground. The answer of the company admits that the road-bed was intended for the use of the company in its business. Paragraph 2 of said answer is as follows: "That its business as set forth in its amended articles of incorporation is to engage in agricultural, manufacturing and mercantile pursuits in the Hawaiian Islands, or in connection therewith, includ-

ing the cultivation of sugar cane, the manufacture of the same into sugar, and all business incidental thereto or which may be profitably conducted in connection therewith, the constructing and maintaining of irrigation works and pumping plants, dams and reservoirs, and the doing of all other things incidental to or proper in the business of supplying water to said corporation and others for irrigation and other purposes; the buying and selling of all goods, wares and merchandise; the dealing in the stocks and bonds of other corporations; the raising of cattle and live stock and all other ranch business; the purchase and hiring of vessels or steamers and operating the same; the operating of railways necessary or proper in connection with the business of a sugar plantation, and the purchase, construction and maintenance of railroad tracks, and of all property used in connection therewith, and the doing of all things, and the transaction of all business that may be lawfully done in connection with the purposes aforesaid or any one of them." The claimant filed a reply admitting the facts alleged in the answer of the company but denying that the company was entitled to an adjudication that it is under no liability to make compensation to him for the said injury so received. It was agreed in a written stipulation filed with the industrial accident board, and made a part of the record here, that the said road-bed was being constructed on land owned or leased by the company. The industrial accident board, by agreement of parties, has reserved to this court for determination the question of law as to whether or not the company, under the facts shown in the said claim, answer, reply and stipulation, is liable to make compensation to the claimant under the provisions of Act 221 of the Session Laws of 1915, commonly known as the Workmen's Compensation Act.

A solution of the reserved question requires a construction of the Workmen's Compensation Act (Act 221, S. L.

1915), especially certain provisions therein, and the answer depends upon such construction. Among other provisions in said act we find the following:

"Section 1. This Act shall apply to any and all industrial employment, as hereinafter defined. If a workman receives personal injury by accident arising out of and in the course of such employment, his employer or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified."

In section 4 we find the following: "The rights and remedies herein granted to an employee on account of personal injury for which he is entitled to compensation under this Act shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury."

Section 6 provides: "No contract, rule, regulation, or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this Act."

Under the head of "Definitions" we find the following in section 60:

"(a) 'Employer' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is insured it includes his insurer as far as applicable.

"(b) 'Workman' is used as synonymous with 'employee,' and means any person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer. It does not include a person whose employment is purely casual or not for the purpose of the employer's trade or business, or whose remuneration from any one employer, excluding pay for over-time, exceeds thirty-six dollars ($36.00) a week."

Section 64 contains the following: "(a) The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this Act.

"(b) This Act shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it."

In determining the' proper meaning and construction of any one section or provision of the act we must look to the act as a whole, determine its scope and object and general purpose, take the language used which is free from technicalities and construe that language broadly and liberally with the view of effecting the purposes of the act (*Young* v. *Duncan,* 218 Mass. 346; *Moore* v. *Lehigh Valley R. Co.,* 154 N. Y. S. 620; *State* v. *District Court,* 129 Minn. 176; *In re Rheinwald,* 153 N. Y. S. 598; *Sadowski* v. *Thomas Furnace Co.,* 146 N. W. 774). We must not only look at the act as a whole but must scrutinize it in all its parts; we must consider every provision, and in case of apparent conflict between two provisions we must so construe the act and each provision that effect will be given to each and every portion; we must give to the words used their usual and ordinary signification. In construing our act we get very little if any assistance at all from the English cases decided under the English Workman's Compensation Act. However, the English cases recognize a paramount principle which we recognize in the matter of construing our own act. For instance, in *Hoddinott* v. *Newton, Chambers & Co., Ltd.,* reported in 3 B W. C. C. 74, Lord Macnaghten said: "The only way to construe the Act is to read it fairly, taking the words in their common and ordinary signification. The court ought not to strain the language in order to bring in or to exclude any particular case, however arbitrary or unscientific the line of demarcation drawn by the act may seem to be." See Willis's Workmen's Compensation, pp. 1, 2, where, in the notes, a number of recent English decisions on this point are cited with quotations therefrom. Our act, by its terms, is to be liberally construed, and by authority the construction must be a broad one so as to effectuate the purposes of the act. A first reading of the act gives the

impression that one of its main purposes is to take from the employee the right of action for injuries received, whether such injuries are caused by the negligence of his employer, by the negligence of a fellow servant, or by any act of his own, not wilful in its intent, to injure himself, but the paramount purpose appears to be to protect the workman and to provide compensation to him from his employer for all injuries received, regardless of questions of negligence and proximate cause. These purposes appear in the acts of the various States which have adopted a workman's compensation act. However, our act, in its terms, is unlike that of any of the States, and outside of the cardinal rule announced in our act and in the acts of the various States and in judicial decisions, that the act is to be broadly and liberally construed, we get no help in construing our act from the adjudicated cases either in England or in the different States. Section 4 of the English act provides that "Where any person in the course of or for the purpose of his trade or business contracts with any other person for the execution by or under the contractor of the whole or any part of the work undertaken by the principal the principal shall be liable to pay any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if the workman had been immediately employed by him." Under that provision the English courts, much conflict being found in their decisions, have had great difficulty in construing the word "undertaken," but in the later cases appear to have finally settled upon the conclusion that the owner of the business does not undertake to do the work which he contracts with another to do. The analogous provision in our act, found in section 60, subdivision (a), heretofore quoted, defining the word "employer," does not use the word "undertaken," so we are not confronted with the difficulty which the English courts have experienced in construing the English act.

Was the company the employer, within the meaning of our Workmen's Compensation Act, of the claimant? Does the mere letting of the contract for building a short stretch of road-bed on the premises of the company exempt it from liability to the claimant? The company is, in the language of the act, "the owner or lessee of the premises" and we think "is virtually the proprietor and operator of the business there carried on," but "by reason of there being an independent contractor * * * is not the direct employer" of the claimant, who was "there employed." In our opinion the words "business there carried on" refer directly to the premises where a general business is conducted. The word "business" has a broad meaning. In *King's* case, 220 Mass. 290, the claimant was employed by a contractor who had a contract to deliver brick made by the Boston Brick Company to its customers. The industrial accident board, and the court to which an appeal was had, held that the claimant was working in the business of the Boston Brick Company and that the delivery of the brick was the business of the company.

In the case at bar the partial construction of a railroad on the premises of the company, although done by an independent contractor, was necessary and proper to the general business of the company, and constructing said road-bed we regard as business carried on by the company, and under the language of section 60, heretofore quoted, the company was an employer of the claimant. It is apparent from a study of the English decisions that if the word "undertaken" was eliminated from the English act the English courts would hold the owner liable for an injury to a workman on his premises who is directly employed by a contractor doing work necessary to the business of the owner. The case of *Luckwill* v. *Auchen S. S. Co.*, 6 B. W. C. C. 51, was decided by Judge Kelly of the county court at Barry, and appealed to the court of appeal and there not

decided, the appeal being dismissed by Cozens-Hardy, M.R., with the following remarks: "It is clear that we cannot do anything for you in this court. We can only give you a passport to the House of Lords."

Our act was framed with the obvious intent to prevent the owners of a business from escaping liability where a workman on their premises, and while doing work necessary and proper to their business on such premises, is injured, although he may be working under an independent contractor. If this is not true how can we account for the use of the language defining "employer" to include the owner or lessee of premises, and the further words, "proprietor or operator of the business there carried on"? The act was intended to guard the interest of workmen on the premises of the owner of the business while doing work connected with or a part of such business and to prevent the owner of the business from escaping liability by contracts or subcontracts of any kind.

Section 6 of our act, while it has but little if any bearing upon the merits of this case, does throw some light on the general intent of the act, especially in the particular now being construed, in that it provides that, "No contract, rule, regulation, or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this act." Bearing this intent in mind it is readily seen that the definition of "employer," found in section 60 in these words (which we repeat), "includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed," applies to the relation of the company to the claimant. Keeping in view the principle announced in the English case heretofore alluded to, that the act must not be limited by straining the language used "in order to bring

in or to exclude any particular case," it seems evident that where work is done on the premises of the owner or operator of the business, although through an independent contractor, if the work is necessary to the business of the owner, or any part of that business, the owner or operator of the business there carried on is liable. It is agreed that the work done through the contractor in this case was done on the premises of the company; that it consisted in the partial construction of a railroad to be used by the company in operating its business; that the company had full power to build and use such railroad for the purposes of its business of producing sugar. The building of said road-bed is one step in the ultimate process of producing sugar, and its building is certainly a part of the company's business. The entire plantation, whether owned or leased by the company, is regularly and permanently used in its business—agricultural and industrial—of producing and manufacturing sugar for pecuniary gain. No part of these premises is permanently used in carrying on the business of the contractor who does not appear to be in the regular business of building railroads, and who was temporarily, with the consent of the company, on its premises, not to its exclusion therefrom, for the contractor was using its camps, tools and appliances and working under the supervision of its engineer. The construction of the road-bed being built (whether in whole or in part does not appear) was not merely connected with the business of the defendant but a part of its business. In the conduct of its business the company had to do many things, no one of which alone is sufficient to produce sugar, but all necessary to that end. Land must be cleared, ditches constructed, ground plowed, cane planted, growing crops irrigated and cultivated, a railroad or roads constructed to get the cane to the mill, the cane ground, the juice boiled and converted into sugar and then put into bags. The construction of the road-bed for

the rails was as necessary as any of the other steps unless some more primitive way, for instance, by mule and cart, should be adopted in transporting the cane from the fields to the mill, as a part of its regular business. The company must have concluded as a matter of economy and pecuniary gain that it would not use the primitive mode of transporting cane but haul the same by means of its own railroad. It does not appear whether the company was primarily inaugurating a railroad system for hauling its cane or whether the road-bed being constructed by the contractor was a small part of a considerable railroad system theretofore existing on the company's plantation. The road being constructed on its own premises, although in part by an independent contractor, was for the purposes of the company's general business, and the company is, within the meaning and intent of the act, an employer of the claimant. If the company, notwithstanding the intent of the act to the contrary, can escape liability in the case at bar by reason of its contract with Harumi, then it may, simply by hiring men by contract to do its business and perform the different steps necessary in conducting its business, escape all liability and do that which the act intends should not be done, namely, leave the workman who may be injured in the conduct of its business to look to his immediate employer, whether solvent or insolvent, for compensation. The act, taking from the employee the right to sue for injuries received, certainly did not intend that his right to look to his employer should be frittered away and the beneficent provisions of the act taken from him by devices and subterfuges or by legitimate contracts entered into in good faith by the company with divers persons for conducting its business or parts thereof. But if the contention of the company is to prevail then any employer in this Territory may evade liability under the Workmen's Compensation Act by simply letting contracts for the doing of its business instead of hiring men by the day or month or year. If that contention

is to prevail it is within the power of the company to escape all liability under the terms of this act, which it could do through contracts. For instance, it could contract the preparation of the soil for planting to A, the planting of its cane to B, the irrigation and cultivation of its crops to C, the cutting of its cane to D, the hauling of its cane to the mill to E, the grinding of its cane and boiling the juices to F, and the putting of the sugar into bags to G, or contract the doing of all these things to one person and escape liability under the act. Such construction would not only narrow the provisions of the act, but would defeat its intent and purposes in their entirety. By the terms of the act under consideration it is within the power of the owner or operator of the business carried on on his premises to protect himself by insurance against loss by reason of accidents to workmen who, although employed by an independent contractor, are working to make his business a success and doing that which is necessary to his business and the success of his business. And, after all, does it make any difference under the provisions of this act whether the sugar company hires its work done by contract or by day labor? Under the language of the act we are of the opinion that it does not; that the act is so broad in its scope, and its purposes and intent so manifest from the language used by the legislature, that it covers the injuries of workmen, regardless of how those injuries occur, if such injuries are sustained while working on the premises of the owner of a business and in the doing of any part of such business. The act guards zealously against evasions of liability by employers through the letting of contracts for the conduct of their business or any parts thereof. The premises in question were not used in the business of building railroads but in the business of producing sugar, and the contractor building the road-bed was only there incidentally, casually, and was doing part of the company's business and assisting the owner of the busi-

ness "there carried on," and such owner is not exempt from liability.

We are not called on in the case at bar to pass upon the validity of any provision of the Workmen's Compensation Act but only to construe the provisions of that act necessary to determine the question of the liability of the company to the claimant for the injuries received by the latter. The reserved question does not submit to us for our determination the question as to whether or not both the company and the contractor (Harumi) are liable, and we do not pass on the question as to the liability of the contractor as we do not regard that question as before us.

The reserved question is answered in the affirmative.

*E. A. Douthitt* for claimant.

*W. T. Carden,* Second Deputy City and County Attorney, *amicus curiae.*

*F. W. Milverton (Thompson, Milverton & Cathcart* on the brief) for Oahu Sugar Co., Ltd.

### DISSENTING OPINION OF ROBERTSON, C.J.

I respectfully dissent. There is no doubt that the Workmen's Compensation Act is to receive a liberal interpretation with the view to effectuate the policy and intent which the legislature has manifested by its enactment. But it is not to be construed upon the theory that it furnishes to an injured workman a double remedy against either or both of two distinct persons when it evidently proceeds upon the theory that there is but one single employer and the workman's remedy is against that employer. There is no doubt that the claimant in this case is entitled to compensation under the act. The question is whether, under the circumstances shown, the company or the independent contractor was the claimant's employer. There is no doubt that the right of an injured workman to look to his em-

Robertson, C. J., dissenting.

ployer for compensation is not to be "frittered away and the beneficent provisions of the act taken from him." But the question may still remain, which of two persons was the man's employer within the purview of the act. It seems to me that the statement made in the majority opinion that "where work is done on the premises of the owner or operator of the business, although through an independent contractor, if the work is necessary to the business of the owner, or any part of that business, the owner or operator of the business there carried on is liable," merely begs the question. If the owner of the premises is also the owner of the business in which the workman was employed of course he is liable. If the statement quoted is intended to lay down as the test of liability the fact whether "the work is necessary to the business of the owner, or any part of that business," then, I say, it is not the test which the legislature has prescribed. The act defines "Workman" as "any person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer." Conversely then, the employer is the person who hires, pays, controls and has the right to discharge the employee. It is an agreed fact in this case that the corporation had no control over the workman, nor the right to employ or discharge him. But the statute contains a special provision applicable to cases where work is being done or a business carried on by an independent contractor upon the premises of another. In such cases " 'Employer' * * * includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed." The word "virtually" is used in contradistinction to "actual" or "real," on the one hand, and "nominal" or "apparent," on the other. In the paragraph just quoted it obviously refers to the business of the inde-

pendent contractor—that in which the workman was employed and in the course of which he was injured. And in such cases the owner or lessee of the premises upon which that work or business was being carried on would be regarded as the employer of the workman and responsible as such in case, and only in case, he was, under the circumstances, "virtually the owner or operator of the business there carried on." This view accords to the language of the statute its ordinary signification. It is not a strained construction, nor does it fritter away any rights of workmen. The Massachusetts act under which *King's Case,* 220 Mass. 290, cited in the majority opinion, was decided, is so obviously different from the statute of this Territory that the decisions under it are of no value as precedents here. See 1 Bradbury's Workman's Compensation (2nd ed.) 537. It appears in the case at bar that upon the premises in question, of which the company is the owner or lessee, there were two businesses being carried on, namely, the general business of the sugar company, of which it is the actual proprietor, and the particular business of the contractor, of which he is the actual operator. The company, nevertheless, would be liable if it was "virtually the proprietor" of the business there being carried on by the contractor, notwithstanding that it was not the direct employer of the claimant. There is no doubt that the company has power under its articles of incorporation to construct, build and equip a railroad to be used upon its plantation, and it must be conceded that if the company itself had undertaken the work of constructing the road-bed in question it would have been liable under the act to compensate workmen injured in the course of the work. The query is, however, whether, under circumstances such as we are dealing with here, the "business" contemplated by section 60 of the statute is the general business of the owner of the premises where the accident occurred, or the particular business of the con-

Robertson, C. J., dissenting.

tractor in the operation of which the workman was employed. Counsel for the claimant contends that the company was virtually the proprietor or operator of the business in the carrying on of which the road-bed was being constructed for the reason that it was work which the company itself had the right to do; that the work was being done upon its premises; that it furnished the tools and appliances needed in the construction work; and that the work was required to be done to the satisfaction of the company's engineer. The deputy city and county attorney, who also argues that the company should be held liable, lays principal stress upon the facts that the contract did not call for the construction of an entirely completed article in which the company had no interest until delivery over to it, and that the work was of a character within the scope of the company's business, and the railroad was being built for use in its business. Counsel for the Oahu Sugar Company draw a distinction between a contract made by the company for the operation of its, or a part of its, ordinary business of growing sugar cane and manufacturing sugar, and one for some matter incidental thereto—an instrumentality—such as the construction of a railroad which would not be used by the company in its business until it had been completed. Their contention is that while in the first case the company might be liable to make compensation to an injured workman, it would not under the latter. But the distinction put by counsel does not furnish a satisfactory test since the principal, under certain circumstances, might well be regarded as the virtual proprietor of the business in which the instrumentality was being constructed. If, in the case at bar, for example, the contractor was shown to be the mere servant or dummy of the company, and that the laborers performed their work under the immediate direction of its engineer, the company could very properly be regarded as the "virtual operator" of the business. In other words, the

company would be virtually the proprietor of the business there carried on of which the independent contractor was the nominal or apparent owner. The fact that the corporation agreed to supply the necessary tools and appliances would seem to be unimportant. This is conceded by the *amicus curiae*. The genuineness of a *bona fide* contract would not be impaired because the compensation going to the contractor was not entirely money, but partly money and partly materials. The record does not show that the contractor did not carry insurance, and in the absence of anything to the contrary it must be assumed that he is solvent and responsible, and not a mere man of straw unable to pay the compensation to which the claimant is entitled. Upon the facts of this case I am of the opinion that the Oahu Sugar Company was not virtually the proprietor or operator of the business in which the claimant was employed, and that the contractor was the responsible employer of the claimant. This view is in harmony with, and is supported by, the provision of paragraph (e) of section 60 of the statute that " 'Employment,' in the case of private employers, includes the employment only in a trade or occupation which is carried on by the employer for the sake of pecuniary gain." The employer for whose "pecuniary gain" the construction work was being done was undoubtedly the contractor, and the fact that the railroad, when completed, is intended to be operated by the company for its pecuniary gain does not show the contrary. The pecuniary gain to be derived from doing the construction work is one thing, and that to be obtained from the operation of the completed railroad is another. The one would accrue to the contractor, the other to the company.

In my opinion the reserved question should be answered in the negative.