GEORGE K. PUCHERT, Appellant, *v.* JOSHUA C. AGSALUD, in his capacity as Director of the State of Hawaii, Department of Labor and Industrial Relations; and PAN AMERICAN WORLD AIRWAYS, Appellees

NO. 8908

(CIVIL NO. 64062)

JANUARY 27, 1984

LUM, C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ.,
AND ASSOCIATE JUDGE TANAKA IN PLACE OF
NAKAMURA, J., DISQUALIFIED

OPINION OF THE COURT BY WAKATSUKI, J.

This is an appeal of the first circuit court's affirmance of the director of labor and industrial relations' dismissal of Appellant's complaint of unlawful discharge from employment pursuant to Hawaii Revised Statutes (HRS) § 378-32(2). The complaint was dismissed for untimely filing under HRS § 378-33(b).

The primary issue involves the construction of a statute, HRS § 378-33. As construed by the director and the lower court, HRS § 378-33(b) requires the filing of a complaint of unlawful discharge from employment only after an employee is able to return to his former job, and not any sooner. We hold that such a construction of the statute does not comport with the legislative purpose and intent of HRS §§ 378-32 and 378-33, and therefore, we reverse.

The parties involved in this action are (1) Appellant Puchert, the employee who filed the complaint of unlawful discharge; (2) Appellee Pan American World Airways (Pan Am), the employer against whom the complaint was filed; and (3) Appellee Agsalud, Director of the State Department of Labor and Industrial Relations (Director) who dismissed Puchert's complaint.

At the time of his alleged unlawful discharge, Puchert had been employed for several years as a port steward by Pan Am. On several occasions, Puchert had suffered back injuries at work, the last of which occurred on December 30, 1978. Due to this December 30th injury, Puchert did not return to work until January 6, 1979, at which time he was allowed to do only light duty work upon the instructions of his chiropractor. By letter of January 9, 1979, Puchert was discharged by Pan Am. The basis for this discharge was Puchert's physical limitations in performing his work.

On January 14, 1979, Puchert, through his union (Transport Workers Union of America), filed a grievance with Pan Am as to his discharge pursuant to a collective bargaining agreement between Pan Am and the Transport Workers Union. The grievance was brought before the Board of Adjustment for arbitration on

February 7, 1979. The Board's decision modified Puchert's dismissal to a medical leave of absence not to exceed six months, and further, required that Puchert, during that six-month period, obtain a medical report from a physician approved by Travelers Insurance Company and a permanent disability rating from the State Department of Labor and Industrial Relations (department) Workers Compensation Division which would not restrict him from performing any of the duties of a port steward. The decision further stated that, upon his return to work, Puchert would be required to comply with Pan Am's attendance standards.

On June 1, 1979, Puchert filed a complaint, pursuant to HRS § 378-32, for unlawful discharge against Pan Am with the department's Enforcement Division. Prior to filing his complaint, Puchert was advised by department personnel to wait until he was released by his doctor to return to work but this advice was not heeded and the complaint was filed.

Five days prior to the expiration of Puchert's medical leave of absence, as granted by the Board of Adjustment, Pan Am asked Puchert to advise the company of his intention to return to work.

On August 1, 1979, Puchert's chiropractor submitted a letter to the department stating that Puchert was still only available for light duty work. However, on August 6, 1979, Puchert was able to obtain a letter from the same chiropractor releasing him for regular duty "on a trial basis."

The facts are not clear whether Puchert reported for duty on August 7, 1979, and was then discharged, or whether he received notification of his termination in some other manner. Nonetheless, Pan Am contends that on August 7, 1979, Puchert had not complied with the terms of the Board of Adjustment's decision, and therefore he had no right to return to work.

Neither on August 7, 1979, nor at any time thereafter did Puchert file another complaint with the department for unlawful discharge.

In June, 1980, a year after Puchert filed his complaint for unlawful discharge with the department, and ten months from the date he was allegedly able to return to work as a port steward, the department held hearings on Puchert's complaint of June 1, 1979. Thereafter, the hearing officer recommended that the complaint be dismissed for lack of jurisdiction due to the untimely filing of the

complaint. The hearing officer concluded that under HRS § 378-33, the only time Puchert could file a complaint for unlawful discharge was within thirty days after his January 9, 1979 discharge, or within thirty days from the date he was able to return to work. Director Agsalud concurred with the hearing officer's recommended decision. Puchert appealed, and the circuit court affirmed the director's decision.

. I.

Before proceeding to an analysis of HRS § 378-33, we address Pan Am's assertion that federal pre-emption apples in view of the federal labor law which provides that where a collective bargaining agreement provides for a resolution of a dispute of this nature through grievance and arbitration proceedings, this Court lacks jurisdiction. Although federal pre-emption was not the basis upon which the director. and the circuit court dismissed Puchert's complaint, the question of a court's jurisdiction cannot be disregarded. *State v. Johnston,* 63 Haw. 9, 11, 619 P.2d 1076, 1077 (1980).

The doctrine of labor law pre-emption concerns the extent to which congress has placed implicit limits on the permissible scope of state regulation of activity touching upon labor management relations. *New York Telephone Co. v. New York State Department of Labor,* 440 U.S. 519, 527 (1979).

.The Railway Labor Act (RLA), 45 U.S.C. 151 *et seq.,* which applies in this case, provides for compulsory arbitration to settle "minor disputes". *Andrews v. Louisville and Nashville RR Co.,* 406 U.S. 320 (1972); *International Assn. of Machinists, AFL-CIO v. Central Airlines,* 372 U.S. 682 (1963); *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189 (9th Cir. 1983). A "minor dispute" exists where a collective bargaining agreement provides a remedy for an alleged wrongful act. *Andrews, supra; Schroeder, supra; REA Express, Inc. v. Brotherhood of Ry, Airline and Steamship Clerks, etc.,* 459 F.2d 226 (5th Cir. 1972).

Cases holding that state law claims are pre-empted by the RLA are clearly distinguishable. The complaints filed in those cases constituted state law claims that were non-existent but for the collective bargaining agreement which provided remedies for such claims, or the state law claims were identical to the contractual claims provided for in the collective bargaining agreement. *E.g., Andrews v. Louisville*

*and Nashville RR Co., supra,* (state law claim of unlawful discharge depended solely on contract right not to be discharged); *Schroeder v. Trans World Airlines, Inc., supra* (complaint of unlawful business practices in violation of California statutes was actually a complaint of wrongful demotion under the collective bargaining contract); *Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425 (9th Cir. 1983) (complaints alleging intentional infliction of emotional distress referred to rights covered or substantially related to the collective bargaining agreement); *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir. 1978) (emotional distress incident of discharge from employment rather than result of alleged conspiracy); *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir. 1983) (state claim raised identical to claim employee would have made had he pursued his grievance through channels specified in the collective bargaining ageement).

Puchert's complaint, however, does not constitute a "minor dispute" subject to mandatory arbitration under the RLA. The resolution of the dispute in question does not hinge on the application or interpretation of the collective bargaining agreement between Pan Am and Puchert's union. Puchert complains of a violation of his right not to be discharged from his employment solely because he suffered from a work injury compensable under the state's workers' compensation law. This right finds its source not in the collective bargaining agreement between Pan Am and Puchert's union, but in the statute. *See Air Line Pilots Assn. v. Northwest Airlines, Inc.,* 627 F.2d 272 (D.C. Cir. 1980).

If Puchert were not permitted to pursue his claim of wrongful discharge under HRS § 378-32 before the state agency and courts, he would have no forum in which to press his claim. An arbitrator may only arbitrate disputes arising under the provisions of the collective bargaining agreement, 51A C.J.S. *Labor Relations* § 429 (1967), and is limited to the interpretation and application of provisions contained within the agreement. *United Steelworkers of America v. Enterprise Wheel,* 363 U.S. 593 (1960). The arbitrator — in this case the Board of Adjustment — would have no authority to consider Puchert's statutory claim. *See Air Line Pilots Assn. v. Northwest Airlines, supra; Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974).

Other employment relations cases brought under federal statutes have held that where the right upon which the complaint is

based is statutory, courts are not denied jurisdiction merely because a collective bargaining agreement exists which provides for grievance and arbitration procedures. *Alexander v. Gardner-Denver Co., supra; Harris v. Norfolk and Western Railway Co.,* 616 F.2d 377 (8th Cir. 1980) (race discrimination suits brought under Title VII of the Civil Rights Act of 1964); *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728 (1981) (wage dispute under Fair Labor Standards Act); *Airline Pilots Assn. v. Northwest Airlines, supra* (violation of ERISA fiduciary standards in managing collectively bargained pension plan); *Johnson v. American Airlines, Inc.,* 487 F. Supp. 1343 (N.D. Tex. 1980) (suit brought under the Age Discrimination in Employment Act).

State court jurisdiction has similarly been upheld where it was clear that the source of the right alleged to have been violated was state statute rather than the collective bargaining agreement. *Bald v. RCA Alascom,* 569 P.2d 1328 (Alaska 1977) (religious discrimination in violation of state antidiscrimination statute); *Franklin Manufacturing Co. v. Iowa Civil Rights Commission,* 270 N.W.2d 829 (Iowa 1978) (employer's group insurance plan violative of state sex discrimination laws); *Peabody Galion v. Dollar,* 666 F.2d 1309 (10th Cir. 1981), and *Vaughn v. Pacific Northwest Bell Telephone Co.,* 289 Or. 73, 611 P.2d 281 (Oregon 1980) (violation of state statute prohibiting discharge for filing workers' compensation claims).

Inasmuch as Puchert's claim of unlawful discharge has its source in state statute and his claim is not identical to any claim he may make under the collective bargaining agreement, we hold that Puchert is not limited to pursuing remedies in the grievance and arbitration procedures established under the collective bargaining agreement.

Although we find that Puchert's state law claim does not interfere with the provisions of the collective bargaining agreement, we must also consider whether application of state law in this case interferes with the scheme of the RLA.

This Court recently reviewed the question of pre-emption in the area of labor law in *Gouveia v. Napili Kai, Ltd.,* 65 Haw. 189, 649 P.2d 1119 (1982). There we concluded that the National Labor Relations Act (NLRA) bestowed exclusive jurisdiction to the National Labor Relations Board on certain matters, *id.* at 193-194, quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959). Yet congress did not wholly pre-empt state regulation. *Id.* at 194, quoting *Garner v.*

*Teamsters Union,* 346 U.S. 485 (1953). States retained the "power to regulate where the activity regulated was merely a peripheral concern of the [NLRA]," and "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that in the absence of compelling congressional direction, . . . [it] could not infer that congress had deprived the states of power to act." *Id.* at 195, quoting *San Diego Bldg. Trades Council v. Garmon, supra.*

*Gouveia* and the cases cited therein examined the conflict between state law and the NLRA. This case, on the other hand, involves federal-state relations under the RLA, but the problems and considerations are analogous, *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369 (1969), and courts have applied standards adopted in NLRA pre-emption cases to RLA cases. *E.g., Beers v. Southern Pacific Transportation Company, supra; Magnuson v. Burlington Northern, Inc., supra; Majors v. U.S. Air Inc.,* 525 F. Supp. 853 (D. Md. 1981); *Jackson v. Consolidated Rail Corp., supra.*

The precise issue of whether state statutes prohibiting unlawful discharges for injuries compensable under workers' compensation laws withstands federal pre-emption was presented in *Peabody Galion v. Dollar, supra,* and *Vaughn v. Pacific Northwest Bell Co., supra.*

The Oklahoma statute examined in *Peabody Galion* and the Oregon statute in *Vaughn* are substantially similar to HRS § 378-32. Both the Tenth Circuit Court of Appeals[1] and the Oregon Supreme Court, respectively, concluded that the state statutes are not pre-empted by federal labor laws. Both courts found that the subject of the respective statutes was of peripheral concern to the federal laws because it had nothing to do with collective bargaining or union organization. *Peabody Galion,* 666 F.2d at 1316; *Vaughn,* 289 Or. at 82, 611 P.2d at 287. Additionally, workers' compensation "is preeminently a matter of state concern," *Peabody Galion,* 666 F.2d at 1316, and the "state has a substantial interest in protecting the integrity of its workers' compensation system." *Vaughn,* 289 Or. at 82, 611 P.2d at 287.

We agree with the analysis of both the Tenth Circuit and the Oregon Supreme Court in these cases. While both cases were

---

[1] *Peabody Galion* came before the Tenth Circuit Court of Appeals as a diversity action.

decided in the context of the NLRA, we find the same standard applicable here and the considerations analogous. We, therefore, hold that HRS § 378-32 is not pre-empted by the RLA in this case, and that the department of labor and the state courts have jurisdiction to hear Puchert's complaint. The source of the right on which Puchert bases his complaint is state statute, not the collective bargaining agreement. His claim of discrimination in violation of the statute could not be considered by the Adjustment Board whose authority extends only to interpretation or application of the collective bargaining agreement. Thus, Puchert's only means of having his cause of action heard is through the administrative and judicial procedures prescribed by state statute. Furthermore, the state statute on which Puchert relies in advancing his unlawful discharge claim is not pre-empted by the RLA. The state has a substantial interest in the welfare of workers who are injured in the course of their employment and to see that they are not penalized for pursuing remedies granted to them by statute. Such regulation by the state does not interfere with the scheme and purposes of the RLA.

## II.

We now turn to an analysis of HRS § 378-33(b), which reads:

No complaint shall be filed after the expiration of thirty days after the alleged act of unlawful suspension or discharge, except that an alleged act of unlawful discharge under subsection 378-32(2) occurring while the aggrieved employee is still physically or mentally incapacitated and unable to work shall be considered to have occurred on the date the aggrieved employee is able to return to work.

HRS § 378-32(2)[2] makes it unlawful for an employer to suspend or

---

[2] § 378-32  Unlawful suspension or discharge from employment. It shall be unlawful for any employer to suspend or discharge any of his employees:
.   .   .   .   .

(2) Solely because the employee has suffered a work injury which arose out of and in the course of his employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing his work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who

discharge any employee solely because of a work injury compensable under the workers' compensation statutes, HRS chapter 386.

Where the language of the statute is plain and unambiguous, and the literal application of the language would not produce an absurd or unjust result, and the language is clearly consistent with the purposes and policies of the statute, judicial construction is inappropriate and it is our duty to give effect to the law according to its plain and obvious meaning. *State v. Palama,* 62 Haw. 159, 612 P.2d 1168 (1980).

However, where the language of the statute is ambiguous, the court's primary objective is to ascertain and give effect to legislative intention. *In re Hawaiian Telephone Co.,* 61 Haw. 572, 608 P.2d 383 (1980).

We find the statute here to be capable of more than one interpretation. Appellees construe HRS § 378-33(b) to allow an employee two discrete periods in which to file a complaint for unlawful discharge or suspension. The first is within 30 days after the alleged act of unlawful discharge or suspension. The second is within 30 days after the employee is able to return to work. Under this construction, assuming Puchert was discharged on January 9, 1979, he had from then until February 9, 1979 in which to file his complaint; or, assuming Puchert was able to return to work on August 7, 1979, he had within 30 days after August 7th to file his complaint of unlawful discharge.

Appellant argues that HRS § 378-33(b) establishes only the outside time limit for filing a complaint, but does not impose a time *before* when a complaint may not be filed. *See Anisgard v. Exxon Corp.,* 409 F. Supp. 212 (E.D. La. 1975). As applied to this case, assuming Puchert had been incapacitated at the time of discharge, he could have filed a complaint at any time prior to thirty days after he was able to return to work.

---

is discharged because of the work injury shall be given first preference of re-employment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment. This paragraph shall not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or re-employment of the injured employee.

Finding both interpretations of section 378-33(b) to be reasonable, and therefore ambiguous, we turn our efforts to discerning legislative intent.

### A.

The substance of section 378-32(2), which creates the right of action for unlawful retaliatory discharge, was originally enacted as part of the workers' compensation statute. Act 116, § 97-135, 1963 Haw. Sess. Laws.[3] In 1970, a legislative determination was made that this statute was more appropriately placed with other statutes dealing with the enforcement division of the department of labor and industrial relations. That statute was therefore repealed and substantially re-enacted as HRS § 378-32. Act 64, § 2, 1970 Haw. Sess. Laws; Sen. Stand. Comm. Rep. No. 606-70 in 1970 Senate Journal at 1257.

The purpose of this statute is to preserve the integrity of the workers'compensation law by protecting employees from retaliatory discharges. If an employer could, with impunity, coerce an employee into foregoing his rights, the employer would be able to destroy the function of the law and circumvent an obligation imposed upon him by the legislature. Larson, *Workmen's Compensation Law* § 68.36(a).

Prior to 1974, HRS § 378-33 required all complaints to be filed within thirty days of the alleged unlawful discharge or suspension. However, in 1974, the legislature was prompted to "extend the time within which an employee who has been unlawfully suspended or discharged in violation of § 378-32(2) may file a complaint. . ." Hse. Stand. Comm. Rep. No. 624-74 in 1974 House Journal at 795-796. This was due to the fact that some employees who were incapacitated by work injuries had been deprived of rights under the law because they were unable to file complaints within thirty days of the discharge or suspension. Thus, HRS § 378-33(b) was amended.[4]

---

[3] Originally designated as § 97-135; later redesignated as § 386-141.

[4] The underscored language was added in 1974:

No complaint shall be filed after the expiration of thirty days after the alleged act of unlawful suspension or discharge, *except that an alleged act of unlawful*

This legislative history suggests the remedial purpose of the provision extending the time for filing complaints.

Furthermore, this court has long recognized the remedial character of the workers' compensation statutes and has construed them liberally to effectuate their beneficient purposes. *Evanson v. University of Hawaii*, 52 Haw. 595, 483 P.2d 187 (1971); *Re Ichijiro Ikoma*, 23 Haw. 291 (1916).

Since the legislative intent of HRS § 378-32(2) is to protect claimants under our workers' compensation law, the time limits established under § 378-33(b) should be liberally construed to accomplish the humanitarian objective of the legislation. The construction of this section allowing a hearing on the merits and providing the employee with the avenue by which he may be afforded a remedy for the violation of his rights would be more consonant with the legislative enactment of remedial social legislation for workers than would a technical reading which would deny relief without an opportunity to be heard. We fail to see that a construction allowing an early filing would seriously compromise or undermine any of the goals or policies of the legislation. Nor have Appellees shown any prejudice by such construction.

### B.

In analogous situations where employment discrimination suits were brought under the Federal Civil Rights and Age Discrimination Acts, federal courts have refused to dismiss suits prematurely filed. *E.g., Hoover v. Opportunities Indus. Ctr. of Roanoke Valley, Inc.*, 348 F. Supp. 657 (W.D. Va. 1972); *Henderson v. Eastern Freight Ways, Inc.*, 460 F.2d 258 (4th Cir. 1972); *Budreck v. Crocker National Bank*, 407 F. Supp. 635 (N.D. Cal. 1976); *Anisgard v. Exxon Corp.*, *supra*. Recognizing the remedial and humanitarian nature of the respective statutes, *Henderson v. Eastern Freight Ways, Inc., supra; Moses v. Falstaff Brewing Co.*, 525 F.2d 92 (8th Cir. 1975), the federal courts have generously construed the law to afford claimants

---

*discharge under subsection 378-32(2) occurring while the aggrieved employee is still physically or mentally incapacitated and unable to work shall be considered to have occurred on the date the aggrieved employee is able to return to work.*

hearings on the merits and to prevent the loss of valuable rights. *See, also, Berg v. Richmond Unified School District,* 528 F.2d 1208 (9th Cir. 1975); *Black Musicians of Pittsburgh v. Local 60-471, American Federation of Musicians, AFL-CIO,* 375 F. Supp. 902 (W.D. Pa. 1974).

C.

Appellee Agsalud urges affirmance of the circuit court's decision on the grounds that a liberal interpretation of HRS § 378-33(b) would open the "flood gates" for untimely filed complaints and thereby create a great inconvenience and an onerous administrative burden to the agency. (Answering Brief of Appellee Agsalud, p. 19.)

By construing HRS § 378-33(b) liberally to preserve Puchert's claim here, we do not require the department to hold all complaints in abeyance until an event occurs which substantiates the claim. If, at the time the department is ready to proceed with a hearing of the complaint but the claimant is still unable to return to work, the department then may exercise its discretion to continue the hearing until timely moved on by the claimant, or may dismiss the complaint without prejudice.[5] *See Henderson v. Eastern Freight Ways Inc., supra; Black Musicians of Pittsburgh v. Local 60-471, American Federation of Musicians, AFL-CIO, supra.*

We also note that the department sits in an adjudicatory capacity in hearing complaints of unlawful discharge, HRS § 378-35, and therefore, it must remain neutral. Whether the filing of a complaint at any given time may be a convenience or inconvenience to the agency is irrelevant and not a proper consideration in adjudicating disputes between the employer and employee.

Based on the foregoing, we hold that an employee, pursuant to HRS § 378-32(2) and (3), may file a complaint prior to the date he is able to return to work.

---

[5] Continuing a hearing, rather than dismissing a complaint, avoids the problem of having to re-file and re-process the same paperwork. When the claimant moves on for hearing after the continuance, he is, in essence, re-filing the complaint. Such "re-filing" must be done within the time limits imposed by HRS § 378-33(b), *i.e.,* no later than thirty days after the claimant is able to return to work.

38

### III.

Lastly, Pan Am argues that Appellant's claim for relief should be barred by the equitable doctrine of laches. Upon a careful review of the record, we conclude that Pan Am's assertion of laches is without merit. *See Adair v. Hustace,* 64 Haw. 314, 640 P.2d 294 (1982).

### CONCLUSION

We hold that the circuit court erred in affirming the director's decision dismissing Puchert's complaint for untimely filing. Further, we hold that Puchert's statutory claim is not pre-empted by the collective bargaining agreement or federal labor laws, nor is his claim barred by the doctrine of laches. We, therefore, reverse and remand Puchert's complaint to the department for a hearing on the merits.

*Herbert R. Takahashi* for appellant.

*Arthur Muraoka* and *Jared H. Jossem* (*Jared H. Jossem* and *John L. Knorek* on the brief; *Torkildson, Katz, Jossem & Loden* of counsel) for appellee Pan American World Airways.

On the brief: *Juliette T. Sarmiento,* Deputy Attorney General, for appellee Joshua C. Agsalud, Director, Department of Labor & Industrial Relations.