**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000369
28-JAN-2026
08:29 AM
Dkt. 65 SO**

NO. CAAP-23-0000369

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

ALLISEN C. MATHERN, Appellant-Appellant, v.
EDWARD D. JONES & COMPANY, CORVEL CORPORATION, and
DIRECTOR, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,
STATE OF HAWAII, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CCV-22-0000157)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

In this secondary appeal, Appellant-Appellant Allisen C. Mathern (**Mathern**) appeals from the October 27, 2025 Final Judgment (**Judgment**) entered in favor of Appellees-Appellees Edward D. Jones & Co. (**Employer**) and Director, Department of Labor and Industrial Relations (**DLIR**), State of Hawaii (**Director**) in the Circuit Court of the Third Circuit (**Circuit Court**).[1] Mathern also challenges the Circuit Court's May 4, 2023 "Order Affirming Director's Decision and Order of May 5, 2022" (**Order**). The Order and Judgment affirmed the Director's May 5, 2022 Decision and Order, which (1) adopted the findings of fact and conclusions of law contained in an administrative hearings officer's July 5, 2019 Recommended Decision, and (2) concluded that Mathern was not discharged by Employer solely because she suffered a work injury in alleged violation of Hawaii Revised

---

[1] The Honorable Henry T. Nakamoto presided.

Statutes (**HRS**) § 378-32(a)(2).[2]

On appeal, Mathern contends that the Circuit Court: (1) erred in concluding that DLIR did not violate Mathern's due process rights when it delayed hearing and rendering a final decision on her claim; and (2) "ignored the substantial evidence and evidence of fraud by the [E]mployer" when the court affirmed the Director's conclusion that Mathern was not discharged solely because she suffered a work injury.[3]

Our review of "decision[s] made by the circuit court upon its review of an agency's decision is a secondary appeal." Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004)). We apply the standards set forth in HRS § 91-14(g) (2012 & Supp. 2019) to determine whether the Circuit Court's decision was right or wrong. Id. at 120-21, 424 P.3d at 475-76 (quoting Paul's Elec. Serv., 104 Hawaiʻi at 416, 91 P.3d at 498).

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Mathern's contentions as follows, and affirm.

---

[2]     (HRS) § 378-32(a) (2015) states, in relevant part:

(a) It shall be unlawful for any employer to suspend, discharge, or discriminate against any of the employer's employees:

. . . .

(2)     Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment. . . .

[3]     Mathern's points of error, which are somewhat difficult to discern, have been restated and reordered for clarity.

2

(1) Mathern contends that DLIR (and presumably the Director) violated her due process rights when it unreasonably delayed hearing and rendering a final decision on her claim. She argues that there were three periods of unreasonable delay, as follows: (1) a 21-month period from October 21, 2015, when Mathern filed her complaint with DLIR, through July 10, 2017, when she requested that DLIR schedule a hearing; (2) an 18-month period from August 16, 2017, when DLIR's then-Director explained to Mathern why her complaint had not proceeded to hearing, through February 1, 2019, when Mathern requested that the hearing officer "initiate proceedings against the Employer" (the hearing then went forward on May 14, 2019); and (3) a 33-month period from July 25, 2019, when Mathern filed her exceptions to the hearing officer's Recommended Decision, through May 5, 2022, when the Director's Decision and Order was issued. These periods coincide roughly with the passage of time between (1) the filing of the complaint and the hearing, and (2) the issuance of the hearing officer's Recommended Decision and the Director's Decision and Order.

The Hawaiʻi Supreme Court has stated that where an agency has followed all relevant administrative requirements, a substantial wait for an agency decision will not be deemed unreasonable unless "the delay was caused by an unjustified agency decision to postpone resolution of the matter or was so outside the bounds of the workings of a large and complex bureaucracy as to be deemed unreasonable *per se*." Trivectra v. Ushijima, 112 Hawaiʻi 90, 109, 144 P.3d 1, 20 (2006). Further, a hearing officer has the authority to "[c]ontrol the procedures of the hearing[,]" and to "[t]ake other actions that are necessary and proper for the conduct of the hearing." Hawaiʻi Administrative Rules (**HAR**) § 12-24-14(a)(1), (6) (effective 1981).

Based on the entire record, we conclude that DLIR did not violate Mathern's due process rights due to unreasonable delay in hearing and deciding her claim. Initially, Mathern has not shown that DLIR failed to follow any relevant administrative requirements. Regarding the alleged delays, as to the period

between the filing of the complaint and the hearing, the Director found that "the Hearing Officer properly stayed the hearing due to the pending determination as to whether [Mathern] suffered a work injury which arose out of and in the course of [Mathern's] employment with [Employer] and which was compensable under [HRS] chapter 386." Indeed, Mathern could not prevail on her claim under HRS § 378-32(a)(2) unless, among other things, she suffered a work injury "which is compensable under chapter 386." Mathern's workers' compensation claim was closed in January 2019, and the hearing officer held a hearing on her HRS § 378-32 claim in May 2019. We cannot conclude that in these circumstances, the hearing officer's decision, in the exercise of his discretion, to wait for a full and final resolution of the workers' compensation claim before proceeding with the section 378-32 hearing was unjustified or "so outside the bounds of the workings of [DLIR] as to be deemed unreasonable *per se*." Trivectra, 112 Hawai'i at 109, 144 P.3d at 20; cf. Puchert v. Agsalud, 67 Haw. 25, 37 n.5, 677 P.2d 449, 458 n.5 (1984) (construing predecessor version of HRS § 378-33(b): "Continuing a hearing, rather than dismissing a complaint, avoids the problem of having to re-file and re-process the same paperwork.").

As to the period between the issuance of the hearing officer's Recommended Decision and the Director's Decision and Order, DLIR's then-Director explained in a February 24, 2020 letter to Mathern's counsel that DLIR was reviewing the entire case file and recorded proceedings of the July 5, 2019 hearing before issuing a final decision and order. Such a review was authorized by HAR § 12-24-15(c) ("Upon filing of exceptions by a party adversely affected by the recommended decision, the director may consider the whole record or portions thereof . . . [and] then make a final decision stating the reasons or basis therefor and enter an appropriate order."). The Director asserted below and now on appeal that the COVID-19 pandemic, of which we take judicial notice, also played a significant role in the delay. We cannot conclude that in these circumstances the delay between the issuance of the hearing officer's Recommended Decision and the Director's Decision and Order was unjustified or

"so outside the bounds of the workings of [DLIR] as to be deemed unreasonable per se." Trivectra, 112 Hawaiʻi at 109, 144 P.3d at 20.

In any event, Mathern has not shown that she suffered any prejudice as a result of the delays she cites, particularly in light of the finding that her position with Employer was eliminated. See infra; S. Foods Grp., L.P. v. State, Dep't of Educ., 89 Hawaiʻi 443, 453, 974 P.2d 1033, 1043 (1999) (to reverse or modify an agency decision under HRS § 91-14(g), "the appellate court must conclude that an appellant's substantial rights were prejudiced by the agency."). On this record, the Circuit Court did not err in concluding that DLIR (and the Director) did not violate Mathern's due process rights.

(2) Mathern contends that the Circuit Court erred when it "ignored the substantial evidence and evidence of fraud by [E]mployer at the agency level" and ruled:

> The DLIR was not clearly erroneous by ignoring the allegedly substantial evidence in support of [Mathern's] returning to work. The [Certified Record on Appeal] supports the decision that [Employer] gave [Mathern] seven months of leave, and that it eliminated her position due to a legitimate business purpose as the Pahoa branch office closed and [Employer] did not have a role for [Mathern] to return to after her leave of absence.

The Director adopted the following findings of fact by the hearing officer, none of which Mathern expressly contests in her opening brief, see Poe v. Haw. Labor Rels. Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002) (ruling that an agency's unchallenged findings are binding on appeal):

> 3. [Mathern] was hired on March 18, 2014, as a Branch Office Administrator (BOA).
>
> 4. [Mathern] worked in the Pahoa office with one other employee, a Financial Advisor (FA).
>
> 5. On January 2, 2015, during her employment with [Employer], [Mathern] suffered a work injury.
>
> 6. [Mathern's] last day of work was February 10, 2015.
>
> 7. [Mathern] filed for workers' compensation on April 12, 2015. The work injury was found to be compensable under Chapter 386, HRS. As a result, [Mathern] collected temporary disability benefits based on an average weekly wage rate of $640.00 as determined by the Disability Compensation Division decision dated July 15, 2015.

8. [Employer] placed [Mathern] on federal Family Medical Leave (FMLA) on her one-year employment anniversary, March 18, 2015. The 12 weeks of job protected leave expired on June 10, 2015. [Employer] extended [Mathern's] leave through September 10, 2015.

9. Between February 13, 2015 through September 30, 2015, [Mathern] was off duty from work.

10. On September 23, 2015, [Mathern] was discharged by [Employer] via letter, and informed she could re-apply for employment once she was released to return to work. [Mathern] received the letter on September 28, 2015 by United Parcel Service.

11. On September 25, 2015, Peter E. Diamond, M.D. opined that [Mathern] could now return to work with restrictions based on his earlier June 11, 2015, independent medical examination (IME) of [Mathern].

12. On September 28, 2015, Dr. Kurt Halverson, D.C., [Mathern's] personal workers' compensation doctor still placed [Mathern] off duty from work between October 1-31, 2015.

13. On October 21, 2015, [Mathern] filed her complaint with the Wage Standards Division.

14. Throughout 2015 and 2016, [Mathern] continued to receive medical treatment for the work-related injury.

15. On October 11, 2016, [Mathern] was released by her workers' compensation doctor to return to work beginning November 1, 2016, with specific work restrictions detailed in the September 21, 2016 Functional Capacity Evaluation Report from CHART Rehab attached. An additional restriction was added effective April 1, 2017. [Mathern] continues to receive occupational therapy for her injury.

(Record citations omitted.)

The Director also relied on the hearing officer's discussion of the relevant facts, which included the following additional relevant findings:

[Mathern] and [Employer] agree that due to the impending Kilauea lava flow from December 19, 2014, the Pahoa office was temporarily closed. [Mathern] and the FA were temporarily located to the Hilo Shopping Center office from December 22, 2014, to January 2015. Once the lava flow stopped, the equipment was moved back from the Hilo office into the Pahoa office with the intent to re-open the Pahoa office. However, the Pahoa office never reopened.

During January 2015, the plan was to re-open the Pahoa office, however, before reopening the Pahoa office, the Hilo FA decided to retire, and the Pahoa FA decided to take over that office. The Hilo office already had an employee in the BOA position, therefore the [Mathern] would not have been eligible to transfer with the FA. Because the FA relocated, the [Employer] permanently closed the Pahoa office, and that office remains closed to this day.

Under HRS § 378-32(a)(2), it is unlawful for an employer "to suspend, discharge, or discriminate against any of the employer's employees . . . [s]olely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer . . . ." However, HRS § 378-32(a)(2) contains a "limited exception" that allows an employer to "suspend, discharge, or discriminate against" an employee "[s]olely because the employee has suffered a work injury" if "the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing." BCI Coca-Cola Bottling Company of Los Angeles, Inc. v. Murakami, 145 Hawaiʻi 38, 44 n.9, 445 P.3d 710, 716 n.9 (2019) (quoting predecessor statute HRS § 378-32(2)). Thus, an employer does not violate the statute: (1) "if it discriminates against [or discharges] an employee for a legitimate reason" or (2) the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Id. at 45, 445 P.3d at 717. "[A] 'legitimate' reason must be one that is justifiable in view of the purpose of the statute," which is to protect employees who suffer work injuries "by ensuring that they are restored to their position or placed in a commensurate position when they return from a work-related injury." Id. (original brackets omitted) (quoting Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 15, 346 P.3d 70, 84 (2015), and citing S. Stand. Comm. Rep. No. 782, in 1981 Senate Journal, at 1249; H. Stand. Comm. Rep. No. 580, in 1981 House Journal, at 1179).

Here, the hearing officer concluded that both: (1) Employer did not discharge Mathern solely because she had suffered a covered work injury (i.e., there was a legitimate reason to discharge her); and (2) Mathern was no longer capable of performing her work as a result of the work injury when she was discharged, and Employer had no work for her once she was released by her doctor to return to work.

7

As to the former conclusion, *i.e.*, the legitimate reason, the hearing officer reasoned:  "[Mathern's incumbent FA at [the] Pahoa office chose not to return to the Pahoa office, and relocated to the Hilo office when the FA at that location retired.  There was already a BOA at that site, and no other vacant BOA position existed there or at any other location on the island of Hawaii."  The Director relied on this same reasoning in the Decision and Order.  This reasoning is based on the hearing officer's relevant factual findings, which were supported by substantial evidence.  In particular, Steven Rarick, Employer's Department Leader of Associate Relations, confirmed in his testimony that the Pahoa office location was temporarily closed following the 2014-15 lava flow; a temporary move was made to the Hilo office; in March 2015, when the Hilo FA retired, the Pahoa FA combined her business with the Hilo FA; the Pahoa FA relocated her office to the Hilo location, and the Pahoa office permanently closed; there was a BOA working at the Hilo office; the FA and the BOA are the only two employees in that location; and there were no other available BOA positions on Hawaiʻi Island.  For her part, Mathern could not explain in her testimony why she believes she was discharged solely due to her injury and stated she did not know why she was terminated.

On appeal, Mathern argues in part that she was capable of returning to work and performing her duties when she was discharged.  We need not decide this issue, however, as substantial evidence supports the Director's conclusion that Employer did not discharge Mathern solely because she had suffered a covered work injury.  See supra.

Mathern also argues that Employer actually discharged her because she had exhausted her FMLA.  Mathern claims that Employer later took the "inconsistent position" that the Pahoa office was closed and there was no position left for her, which Mathern also characterizes as "fraud."  These arguments raise factual issues that turn on the hearing officer's resolution of any conflicts in the witnesses' testimony or other evidence.  "[C]ourts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative

findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony . . . ." <u>In re Hawaiian Elec. Co.</u>, 81 Hawaiʻi 459, 465, 918 P.2d 561, 567 (1996) (citing <u>In re Hawaiian Elec. Light Co.</u>, 60 Haw. 625, 629, 594 P.2d 612, 617 (1979)).

Here, the hearing officer, "[h]aving reviewed the evidence presented by the parties and having observed the demeanor of those who testified," determined that Mathern was not discharged solely due to her work injury, in that Employer's Pahoa office was permanently closed in early 2015 and there were no other available positions for her on Hawaiʻi Island. Mathern has not shown that these mixed determinations of fact and law, which the Director adopted, were "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.]"[4/] HRS § 91-14(g)(5) (2012 & Supp. 2019).

Accordingly, the Circuit Court did not err in affirming the Director's Decision and Order.

For the reasons discussed above, the Final Judgment entered on October 27, 2025, in the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, January 28, 2026.

On the briefs:

Ted H.S. Hong
for Appellant-Appellant.

Li-Ann Yamashiro and
Adam S. Rosenberg,
Deputy Attorneys General,
for Director, Department of
Labor and Industrial
Relations, State of Hawaiʻi,
Appellee-Appellee.

Judy M. Iriye
(Littler Mendelson, P.C.),
for Edward D. Jones & Company,
Appellee-Appellee

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[4/] We also reject Mathern's contention that Employer first argued during the May 14, 2019 hearing that the Pahoa office had been closed and Mathern's position had been eliminated. Employer in fact raised this issue in its August 19, 2016 response to the charge of discrimination filed by Mathern with the Hawaiʻi Civil Rights Commission, as well as in Employer's May 7, 2019 Hearing Memorandum.