Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001135
28-SEP-2018
08:03 AM

NO. CAAP-14-0001135

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


IN THE MATTER OF BCI COCA-COLA BOTTLING
COMPANY OF LOS ANGELES, INC.,
Respondent/Appellant/Appellee/Cross-Appellee,
v.
LEONARD HOSHIJO, in his official capacity as the Director,
Department of Labor and Industrial Relations, STATE OF HAWAI'I;
DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAI'I,
Appellees/Appellees/Cross-Appellants,
and
TAMMY L. JOSUE,
Complainant/Appellee/Appellant/Cross-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-1817-06)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Respondent-Appellant-Appellee-Cross-Appellee BCI Coca-Cola Bottling Company of Los Angeles, Inc. (**BCI**) is the former employer of Complainant-Appellee-Appellant-Cross-Appellee Tammy L. Josue (**Josue**). Josue and Appellees-Appellees-Cross-Appellants the Department of Labor and Industrial Relations (**DLIR**), represented by its Director Leonard Hoshijo[1] (**the Director**),

---

[1] Leonard Hoshijo is the current Director of the DLIR and thus is automatically substituted as a party in this appeal. See Hawai'i Rules of Appellate Procedure (**HRAP**), Rule 43(c).

(collectively, **Appellees**), appeal from the August 28, 2014 "Final Judgment" filed by the Circuit Court of the First Circuit (**Circuit Court**),[2] and challenge the underlying "Order Reversing Department of Labor and Industrial Relations, State of Hawai'i's Decision and Order Dated June 5, 2013" (**the Circuit Court's Order**), filed on August 19, 2014.

## I.    Background

Josue suffered a work injury while employed by BCI and was placed on disability leave.  After Josue was on disability leave for over ten months, BCI hired a permanent replacement for Josue's pre-work-injury position.  Josue later sought to return to her pre-work-injury position at BCI, but BCI refused to reinstate her to her former position because it had been filled. BCI offered a number of other positions to Josue, but Josue declined because she believed  that those positions were downgrades or positions for which she was not qualified.

Josue filed a complaint (**Complaint**) with the DLIR on September 15, 2010.  BCI filed a Motion to Dismiss on the grounds that Josue's Complaint was untimely pursuant to Hawaii Revised Statutes (**HRS**) § 378-33(b) (2015).  The DLIR Hearing Officer issued a "Recommended Decision on Motion to Dismiss Complaint," which denied BCI's motion and stated that:

> [t]he evidence reveals that [BCI] . . . failed to return
> [Josue] to her usual and customary duties . . . after she
> was released to return to full work duty, no restrictions on
> September 1, 2010.  Therefore, based on the evidence
> presented, it is clear that [Josue] filed her Complaint well
> within the time allowed by [HRS § 378-33(b)].

On August 1, 2011, after an evidentiary hearing, the DLIR Hearing Officer issued a recommended decision (**Recommended Decision**) on Josue's Complaint, determining that BCI had discriminated against Josue in violation of HRS § 378-32(a)(2)(2015).[3]  The findings of

---

[2]  The Honorable Rhonda A. Nishimura presided.

[3]  HRS § 378-32 states, in relevant part:

> §378-32  **Unlawful suspension, barring,**
> **discharge,  withholding pay, demoting, or**
> **discrimination.**  (a) It shall be unlawful for any

(continued...)

fact and conclusions of law in the Recommended Decision were adopted in full in the Director's Decision and Order (**Final Decision**). BCI appealed to the Circuit Court.

The Circuit Court, after reviewing the briefs and hearing arguments, issued its Order reversing the decision of the DLIR. The Circuit Court's Order determined that: (1) the DLIR erred when it denied BCI's Motion to Dismiss on the basis that Josue's Complaint to the DLIR was untimely; (2) the DLIR's interpretation of "discrimination" in HRS § 378-32(a)(2), by relying upon a standing committee report published upon the amendment of that statute to add discrimination as a prohibited act, without looking at any other references as to what constitutes discrimination, was "untenable"; and (3) the refusal by BCI to return Josue to her pre-work-injury position did not constitute discrimination.

On August 28, 2014, the Circuit Court entered Final Judgment pursuant to its Order. Josue and the DLIR now appeal

---

[3](...continued)
employer to suspend, discharge, or discriminate against any of the employer's employees:

. . . .

(2)     Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing. Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment. This paragraph shall not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of the injured employee;

from the Circuit Court's Final Judgment and underlying Order and challenge each of the Circuit Court's rulings set forth above.

## II.   Josue's Complaint Was Timely

The Circuit Court erroneously determined that the Hearing Officer erred in denying BCI's Motion to Dismiss Josue's Complaint as time-barred by HRS § 378-33(b).  HRS § 378-33 provides:

> (a) Any employee aggrieved by an alleged unlawful suspension, discharge, or discrimination may file with the department of labor and industrial relations a complaint in writing, stating the name and address of the employer alleged to have committed the unlawful suspension, discharge, or discrimination, and shall set forth the particulars thereof and other information as may be required by the department.

> (b) No complaint shall be filed after the expiration of thirty days after the alleged act of unlawful suspension, discharge, or discrimination, or after the employee learns of the suspension or discharge, except that a complaint for an alleged act of unlawful discharge under section [378-32(a)(2)] occurring while the aggrieved employee is still physically or mentally incapacitated and unable to work also may be filed before the expiration of thirty days after the date the aggrieved employee is able to return to work.

HRS § 378-33 (emphasis added).  Therefore, pursuant to HRS § 378-33(b), Josue had a period of "thirty days after the alleged act of unlawful . . . discrimination" in which to file her Complaint.

BCI argues, as apparently found by the Circuit Court, that the alleged act of unlawful discrimination occurred in April of 2010, when BCI hired another employee on a permanent basis to replace Josue.  Josue and DLIR argue that the alleged act of discrimination did not occur until September 1, 2010, when Josue was released to work by her doctor, informed BCI she was released to work, and was refused reinstatement to her pre-work-injury position by BCI.

We agree with the DLIR and Josue that Josue's Complaint was timely filed under HRS § 378-33(b).  While BCI had filled Josue's pre-work-injury position in April of 2010, Josue was not then able to return to her position due to her work injury. Prior to Josue's release to return to work and her attempted return on September 1, 2010, it was possible that (1) her pre-

4

work-injury position would become available again, (2) a position at BCI would become available for which Josue was qualified and was not a downgrade from her previous position, or (3) it could have been determined that Josue would be unable to return to her pre-work-injury position. Had Josue filed her complaint in April of 2010, BCI would have been able to argue there was no discrimination against Josue at that time because she had not been released to work. Thus, such a claim would have been premature.

In addition, the DLIR's Final Decision considered the various positions BCI had referred to Josue and found that the positions were downgrades from her former position, or earned a lower wage, or had some other attribute that made the positions unsuitable for her. We infer from these findings that had a position been offered to Josue by BCI (1) for which Josue was qualified, and (2) was not a downgrade or reassignment to duties at a lower rate of pay or otherwise discriminatory in working conditions or terms of employment, then BCI would not have been found to have committed a discriminatory act against Josue. This is indeed the position of the DLIR on appeal. Neither BCI nor Josue could have known whether such a position meeting those specifications was available until Josue was able to return to work on September 1, 2010.

We are not persuaded by BCI's claim that the Hearing Officer mistakenly relied upon the provision in HRS § 378-33(b) that increases the time in which to file a complaint for an employee who has been unlawfully discharged. In the case of an unlawful discharge of an employee who is "physically or mentally incapacitated and unable to work[,]" the employee is granted thirty days to file her complaint after she is able to return to work. HRS § 378-33(b). As explained above, the DLIR found that the alleged act of discrimination did not occur until September 1, 2010, and did not rely upon the extension of time provided under HRS § 378-33(b) to discharged and incapacitated employees.

We are also mindful of the Hawai'i Supreme Court's instruction that the time limits established under HRS § 378-33(b) "should be liberally construed to accomplish the humanitarian objective of the legislation." Puchert v. Agsalud, 67 Haw. 25, 36, 677 P.2d 449, 457 (1984). Accordingly, we agree with the DLIR and Josue that the Circuit Court erred when it determined that the DLIR should have dismissed Josue's Complaint as time barred, because the Complaint was timely filed.

## III. The Circuit Court Was Correct That BCI Did Not Violate HRS § 378-32 (a)(2)

The Circuit Court did not err in determining that BCI did not discriminate against Josue solely because she had suffered a work injury and, therefore, did not violate HRS § 378-32(a)(2).

HRS § 378-32(a)(2) provides, in relevant part, that it is unlawful for an employer to "discriminate against" an employee

> [s]olely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing.

The DLIR determined that in failing to return Josue to her pre-work-injury position, BCI "discriminated against her solely because of a compensable work injury" (emphasis added). BCI argued, and the Circuit Court concluded, that BCI did not discriminate against Josue solely because of a work injury, but rather BCI "refused to return Ms. Josue to her pre-work-injury position because Ms. Josue's pre-work-injury position had been filled, and that refusal did not constitute discrimination" (emphasis added). The underlying facts are not in dispute. Rather, it appears that the difference between the Appellees' and BCI's positions relates to the causation required by the statute. The disagreement is whether, consistent with HRS § 378-32(a)(2), Josue's work injury was the sole cause of BCI's decision not to reinstate Josue to her pre-work-injury position.

6

In order to resolve this dispute, we must construe the statute. In construing statutes,

> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1-15(2) (1993). "Laws in *pari materia*, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1-16 (1993).

In re Water Use Permit Applications, 94 Hawai'i 97, 144, 9 P.3d 409, 456 (2000) (internal citations omitted). If we determine based upon the above principles that the legislature has unambiguously spoken, our inquiry ends. Id. If, however, we determine that the "the legislative intent is less than clear,"

> this court will observe the well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous.

Id. (internal quotation marks omitted). This rule of judicial deference "reflects a sensitivity to the proper roles of the political and judicial branches, insofar as the resolution of ambiguity in a statutory text is often more a question of policy than law." Id. at 145, 9 P.3d at 457 (internal quotation marks and citation omitted). Such deference is not afforded "when the agency's reading of the statute contravenes the legislature's manifest purpose." Id.

HRS § 378-32(a)(2) provides it is unlawful for an employer to "discriminate against" an employee "[s]olely because the employee has suffered a work injury . . . unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing." HRS § 378-32(a)(2). The second half of the statute, providing the exception for employees no longer capable of performing the work, is not relevant here as we have accepted that the alleged discriminatory act did not occur until after Josue was released to work without restrictions, fully capable to perform her pre-work-injury position. Therefore, the first question is whether the statutory language itself, read in the context of the statute as a whole, provides a clear and unambiguous answer as to whether BCI (1) discriminated against Josue (2) solely because she suffered a work injury.

None of the relevant terms above are defined explicitly by statute and the DLIR has issued no regulation providing more precise definitions regarding its interpretation of the statute. "Discriminate," while sometimes a term of art, in its standard sense means "fail[ing] to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." *Discrimination*, Black's Law Dictionary 566 (10th ed. 2014). Looking more broadly at the context in which HRS § 378-32(a)(2) appears, we note that Chapter 378 of the HRS governs a variety of unlawful employment practices. HRS § 378-2 sets forth a number of adverse employment actions that qualify as "[d]iscriminatory practices," citing specific actions that are prohibited for specific reasons, such as making it unlawful to refuse to hire an employee because of the employee's sex, gender identity or expression, age, etc. See HRS § 378-2(a). However, the term as used in HRS § 378-32 is arguably ambiguous as the actions that constitute "discrimination" are left unenumerated. Thus, we turn to the legislative history of that section for clarity.

8

HRS § 378-32 was amended by the legislature in 1981 to make it an unlawful employment practice to "discriminate" against an employee because of a work injury. The House and Senate Standing Committees issued reports containing similar statements regarding the purpose of the amendment. The House Standing Committee report explained:

> Current law prohibits <u>suspension</u> or <u>discharge</u> of an employee who has suffered from a work injury or has filed for bankruptcy or because the employer was summoned as a garnishee. However, an employee can be <u>downgraded, reassigned to other duties at a lower rate of pay, or otherwise be discriminated against in condition or terms of employment</u> under the above conditions without violating the law. This bill provides further protection to the employee in such cases by making such discrimination unlawful.

H. Stand. Comm. Rep. No. 580, in 1981 House Journal, at 1179; <u>see also</u> S. Stand. Comm. Rep. No. 782, in 1981 Senate Journal, at 1249 (collectively, **Standing Committee Reports**). Therefore, as relevant to this case, the reports provide that the purpose of including "discriminate" in the statute was to make it an unlawful employment practice for an employer to downgrade, reassign to other duties at a lower rate of pay, or otherwise discriminate in conditions or terms of employment against an employee who has suffered from a work injury. Consequently, to "discriminate," as used in HRS § 378-32, means generally to take an adverse employment action against an employee because the employee has suffered a work injury and not for a legitimate and reasonable cause.

Next we must consider the causation requirement set forth in HRS § 378-32(a)(2), that the discrimination must be "solely because" the employee has suffered a work injury. Again, the DLIR has not defined the term for the purposes of HRS § 378-32(a)(2). "Solely," as commonly understood, means "to the exclusion of alternate or competing things." *Solely*, <u>Webster's Third New International Dictionary</u> (1981). Looking beyond the statute and into the other provisions of Chapter 378, HRS § 378-2 lists numerous unlawful employment practices, but none of the prohibitions therein contain the language adopted by the legislature in HRS § 378-32(a)(2) that forbids an employment

practice "solely because" of some protected class or activity.[4] This is also true of other statutes within the chapter. See HRS § 378-2.3 (2015) ("No employer shall discriminate between employees because of sex . . .") (emphasis added); HRS § 378-26.5(6) (2015) (stating that it is unlawful for an employer to discriminate against an employee "because such person has filed a complaint, testified, or assisted in any proceeding respecting the unlawful practices prohibited under this part") (emphasis added). Therefore, the various other prohibitions listed in Chapter 378 help illustrate that the language used by the legislature in HRS § 378-32(a)(2) is more precise and more restrictive than found elsewhere in the chapter.[5] The Standing Committee Reports cited above do not indicate any intent other than what the language of the statute clearly requires: the work injury must be the sole cause of the adverse employment action to run afoul of the statute.

This conclusion is consistent with the one case, identified by the parties and this court, that has considered the causation required by HRS § 378-32(a)(2). In Fergerstrom v. Datapoint Corp., the United States District Court for the District of Hawaiʻi considered a claim by a terminated employee that he was discriminated against solely because he suffered a

---

[4] See e.g., HRS § 378-2(a)(1) (2015) (employer may not take a number of employment actions "[b]ecause of race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status") (emphasis added); HRS § 378-2(a)(2) (it is an unlawful discriminatory practice "[f]or any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part") (emphasis added); HRS § 378-2(a)(5) (it is an unlawful discriminatory practice "[f]or any employer to refuse to hire or employ or to bar or discharge from employment any individual because of assignment of income for the purpose of satisfying the individual's child support obligations as provided for under section 571-52") (emphasis added).

[5] HRS § 386-142 (2015) in large part mirrors the language of HRS § 378-32(a)(2) and pertains to the employment rights of injured employees under Hawaiʻi's Workers' Compensation Law, providing that it is unlawful for an employer to suspend or discharge an employee "solely because the employee suffers any work injury. . . ."

work injury and who asserted a violation of the same statute, HRS § 378-32(a)(2). 680 F.Supp. 1456 (D. Haw. 1988). In that case, the employee suffered a back injury while working for the employer, was unable to work, and received workers' compensation benefits for a period longer than ninety days. Id. at 1457. The employer had a policy that any employee who was on a leave of absence for any reason for more than ninety days would have his or her employment administratively terminated and would be given the right of preferential reemployment, provided a position was available and the employee was qualified. Id. Pursuant to the policy, the employee was terminated because he had been on leave for a period of more than ninety days because he had suffered a work injury. Id. at 1457. The District Court found that the employer had not violated the statute, in part, because the employee was not terminated solely because of his work injury but because he was incapacitated for a period longer than ninety days. Id. at 1458. The District Court concluded that "[s]ince Section 378-32(2) itself expressly limits its application to circumstances in which the compensable injury is the sole reason for the employer's action, it is not for the courts to expand this limited policy by judicial instruction." Id. at 1459.[6]

---

[6] In an unpublished decision, Zhang v. State of Hawai'i, Dep't of Land and Nat. Res., the Hawai'i Supreme Court considered the same causation requirement in HRS § 386-142, which states that an employer cannot suspend or discharge an employee "solely because" he or she has suffered a work injury compensable under the Workers' Compensation Law. See No. SCWC-11-0001106, 2016 WL 4182511 (Haw. Aug. 8, 2016) (mem. op.); see also HRS § 386-142. In Zhang, the employee claimed that her employer had discriminated against her and discharged her for filing a grievance against her employer and because she filed a workers' compensation claim. 2016 WL 4182511 at *6. Pursuant to HRS 386-142, it is unlawful for an employer to suspend or discharge an employee "solely because the employee suffers any work injury" compensable under that chapter, the Workers' Compensation Law. HRS § 386-142. In a related lawsuit brought by the employee, the circuit court had made a finding that the employee was terminated because the employer had an "incorrect but actual belief" that the employee had failed to submit documentation necessary to extend her work authorization. Zhang, 2016 WL 4182511 at *14. The Supreme Court held that the employee was collaterally estopped from claiming that "she was discharged 'solely' because she filed this workers' compensation claim" because the circuit court found a reason other than her filing of the workers' compensation claim for her discharge. Id. The Supreme Court, recognizing that at least one other cause for the discharge had been established as a fact, concluded that the employee could not establish that her filing of a workers' compensation claim was the sole reason for her termination. Id.

We hold that the statute is not ambiguous and requires that the work injury be the sole cause of the adverse employment action to run afoul of HRS § 378-32(a)(2).  It should, of course, be recognized that employment decisions are often complicated and making determinations regarding causation in cases alleging discrimination always requires the fact-finder to closely interrogate the facts and make judgments regarding the genuine motivations in alleged discriminatory behavior.  Pre-textual reasons for an adverse employment action cannot provide a defense to a discrimination claim.

BCI maintains that it did not run afoul of HRS § 378-32(a)(2) because Josue was unable to return to her pre-work-injury position due to her prolonged absence from work, which created a business hardship that required BCI to fill the position before Josue was able to return to work.  The DLIR concluded, on the other hand, that BCI did discriminate against Josue solely because she suffered a work injury.

Whether BCI refused to reinstate Josue to her pre-work-injury position solely because she suffered a work-injury, and thus satisfied the statute's causation requirement, presents mixed questions of law and fact.[7]  Therefore, the agency's determination of that question must be upheld unless it was clearly erroneous.  See Surfrider Foundation v. Zoning Bd. of Appeals, 136 Hawai'i 95, 107, 358 P.3d 664, 676 (2015).  Although the Circuit Court did not explicitly find erroneous the DLIR's conclusion that Josue's work injury was the sole cause of her inability to return to her pre-work-injury position, it implicitly made that finding when it determined that the reason Josue was not able to return to her pre-work-injury position was not Josue's work injury but rather that BCI had already filled her position when Josue was released to return to work.

We agree with the Circuit Court that the DLIR's conclusion that Josue was not returned to her pre-work-injury

---

[7]  BCI challenged the Hearing Officer's finding that Josue's work injury was the sole cause of the failure of BCI to reinstate Josue to her former position in its Exceptions to the Hearing Officer's findings.

position solely because of her work injury was clearly erroneous. The evidence showed that Josue suffered her work injury on May 29, 2009, resulting in her taking a leave of absence. Pursuant to BCI's Disability Leave Policy, Josue could continue to receive plan benefits from BCI for a period of twelve months. After Josue did not return to full-time work after the end of twelve months, which occurred in June of 2010, BCI could, pursuant to the Disability Leave Policy, terminate her employment. Between her injury on May 29, 2009 and April of 2010, BCI had two other supervisors cover for Josue's absence by learning her position and arriving to work two hours earlier than normal to perform her job in addition to their own duties. Josue provided to BCI several updates from her doctor regarding her status, pursuant to BCI's policies, but neither Josue's doctor nor Josue could determine or communicate when or if Josue would ever be able to return back to work. BCI decided to replace Josue with a permanent employee because Josue's prolonged absence was creating a hardship for the department, over ten months after Josue went out on leave. BCI did not learn until late August 2010 -- about fifteen months after Josue's injury -- that Josue was released to work as of September 1, 2010. By that time, Josue's pre-work-injury position had been filled.

There is no finding by the Hearing Officer that indicates in any way that BCI's business hardship justification for filling Josue's position was pretextual. The Hearing Officer found that "[a]lthough [HRS § 378-32(2)] does not require [BCI] to keep [Josue's] position open indefinitely" it was discriminatory to fail to return her "to work full duty, no restrictions to the position occupied at the time of injury." The Hearing Officer found that "[BCI] knew or should have known that [Josue] could return to work without restrictions one day, and that with this knowledge in mind, should have filled [Josue's] position with a replacement that was subject to [Josue's] right to return to her pre-work injury position." (emphasis added). The Director agreed and in the Final Decision stated that while BCI "should not be required to hold [Josue's]

position open indefinitely, in this instance, [BCI] could have met its business concerns and the requirements of [HRS § 378-32] by filling the position with a replacement that was subject to [Josue's] return rights." Therefore, the DLIR determined that <u>despite the legitimate business concerns</u> faced by BCI, HRS § 378-32(a)(2) affords "return rights" to Josue that apparently exist for so long as the employer does not affirmatively know that Josue will never be able to return to her former position.

We hold that this position asserted by the DLIR goes beyond the protection intended by HRS § 378-32(a)(2). As explained above, HRS § 378-32(a)(2) only precludes taking an adverse employment action against an employee <u>solely</u> because of a work injury. The statute does not preclude BCI from determining, as it did here, that Josue's prolonged absence from work caused such a hardship that leaving her pre-work-injury position unfilled was no longer feasible. Neither the language of the statute nor its legislative history suggest that employers are required to go to the lengths determined by the DLIR in this case, requiring that employers either leave a vacated position open or hire temporary employees to replace an injured employee who may be unable to return to their previous employment for lengthy periods of time. Interpreting HRS § 378-32(a)(2) to mandate this result is not consistent with the plain language of the statute or its legislative history.

We thus hold that the DLIR's conclusion that BCI did not return Josue to her pre-work-injury position solely because she suffered a work injury was clearly erroneous. The DLIR acknowledged that business necessity was also a reason for BCI's actions and there is no indication that the justification was pretextual. To the contrary, the evidence showed that BCI waited over ten months before replacing Josue, at a time when neither BCI nor Josue could determine whether Josue would ever be able to return to her pre-work-injury position without restrictions. The DLIR's conclusion that Josue's work injury was the sole cause of BCI's refusal to return her to her pre-work-injury position was

14

clearly erroneous.   The Circuit Court did not err in reversing the DLIR on this issue.

Although the Circuit Court erred when it concluded that Josue's Complaint was untimely filed, the error was harmless given that the Circuit Court correctly concluded that Josue's claim of discrimination under HRS § 378-32(a)(2) fails on the merits.

## IV.   Conclusion

Based on the above, the "Final Judgment" entered on August 28, 2014, in the Circuit Court of the First Circuit, is affirmed.

DATED:   Honolulu, Hawai'i, September 28, 2018.


On the briefs:

Anna Elento-Sneed,
Malia E, Kakos,
for Respondent/Appellant/
Appellee/Cross-Appellee.

Frances E.H. Lum,
Adam S. Rosenberg,
Deputy Attorneys General,
Department of the Attorney General,
for Appellees/Appellees/
Cross-Appellants.

Ronald T. Fujiwara,
for Complainant/Appellee/
Appellant/Cross-Appellee.

Robert H. Thomas,
Christopher J.I. Leong,
on the amicus curiae brief for
National Federation of Independent
Business Small Business Legal Center.

Nathalie S. Pettit,
on the amicus curiae brief for
Society of Human Resource
Management Hawaii.

Chief Judge

Associate Judge

Associate Judge

15