**Electronically Filed
Supreme Court
SCWC-14-0001135
10-JUN-2019
09:28 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF BCI COCA-COLA BOTTLING
COMPANY OF LOS ANGELES, INC.,
Respondent/Respondent/Appellant/Appellee/Cross-Appellee,

vs.

SCOTT MURAKAMI, in his official capacity as the Director,
Department of Labor and Industrial Relations, STATE OF HAWAI'I;
DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAI'I,
Respondents/Appellees/Appellees/Cross-Appellants,

and

TAMMY L. JOSUE,
Petitioner/Complainant/Appellee/Appellant/Cross-Appellee.

SCWC-14-0001135

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001135; CIV. NO. 13-1-1817-06)

JUNE 10, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

Hawai'i law protects workers who suffer injuries

arising out of and in the course of their employment from being

discharged, suspended, or discriminated against on the sole basis of their work injuries. In this case, an employer hired a permanent replacement for an employee who was taking a leave of absence due to such an injury. The employer thus declined to reinstate the employee to her pre-injury position upon her return, instead offering her only positions that were downgrades from her previous work or that she was unqualified to perform. The employer contends that this was not discrimination based solely on the employee's work injury because it was motivated by the company's business needs.

We now hold that, in order for business necessity to constitute a valid defense to a claim of work injury discrimination, an employer must demonstrate that the employee's absence caused a business impairment that could not be reasonably alleviated by means that would not result in discrimination. Because no such showing was made in this case, we affirm the decision of the Director of the Hawai'i Department of Labor and Industrial Relations that the work injury discrimination in this case contravened our law. We accordingly vacate the Circuit Court of the First Circuit's judgment and the Intermediate Court of Appeals' Judgment on Appeal and remand the case to the Hawai'i Department of Labor and Industrial Relations for any further proceedings as may be appropriate.

## I. FACTS AND PROCEDURAL HISTORY

### A. Agency Proceedings

### 1. Hearing Officer

On September 15, 2010, Tammy L. Josue filed a complaint with the Wage Standards Division of the Hawai'i Department of Labor and Industrial Relations (Department) alleging that BCI Coca-Cola Bottling Company (Coca-Cola) discriminated against her on the basis of her work injury in violation of Hawai'i Revised Statutes (HRS) § 378-32(2) (1993).[1] Coca-Cola responded on October 7, 2010, denying the allegations and arguing that Josue's claim was untimely.

---

[1]    HRS § 378-32(2) (1993), which has since been recodified as HRS § 378-32(a)(2), provided in relevant part as follows:

> It shall be unlawful for any employer to suspend, discharge, or discriminate against any of the employer's employees:
>
>    . . .
>
>> (2) Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing.  Any employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment.

In the interest of clarity, this opinion will refer to the statute as HRS § 378-32(2), which is the codification applicable to the alleged discrimination in this case.

An administrative hearing on the complaint commenced on February 7, 2011. Josue testified that she began working at Coca-Cola in 2000 as a full-service driver and later received a promotion to full-service supervisor. On May 29, 2009, Josue stated, she suffered an injury during the course of her employment. Josue explained that she was unable to work as a result of this injury and was placed on a leave of absence in accordance with Coca-Cola's disability leave policy. Josue testified that she attempted to resume her employment on September 1, 2010, the day after her doctor authorized her to return to work with no restrictions, but she was informed that Coca-Cola had hired an employee to permanently fill her position. Coca-Cola thereafter offered Josue several other positions with the company, but Josue testified that these offers were rejected because she either could not meet the physical requirements of the positions due to a prior shoulder injury, the positions required experience or certifications that she did not possess, or the positions were downgrades from her pre-injury employment.

Coca-Cola called two witnesses: a human resources manager and Josue's supervisor. The human resources manager testified that, during Josue's absence, she received a request

from Josue's supervisor that the position be filled.[2]  The

manager stated that, after Josue's position had been vacant for

ten months, Coca-Cola hired a permanent replacement in April

2010.[3]  The vacancy had been creating a hardship, the manager

explained, because two other supervisors were covering Josue's

job duties in addition to performing their own.  Josue's

supervisor added that the two individuals providing coverage

were required to adjust their schedules by arriving to work two

hours prior to the time that they typically arrived.

When asked by the hearing officer about the internal

process behind hiring a permanent replacement to fill Josue's

position, the manager refused to answer because she said that

the process was "confidential" and "privileged."  The manager

stated, however, that the company did not have any information

regarding whether Josue was capable or incapable of returning to

work when it hired Josue's replacement.  The manager testified

that Coca-Cola's disability leave policy, which allowed an

employee to take a twelve-month leave of absence after a work

injury, does not state that the injured employee's job will

remain open for those 12 months, but rather merely provides that

the employee's benefits end after twelve months.

---

[2]     Josue's supervisor testified that he did not submit a request to fill Josue's position.

[3]     The replacement was a former employee who held Josue's position immediately prior to Josue.

In her post-hearing brief, Josue argued that Coca-Cola violated HRS § 378-32(2) by failing to return her to the position she had previously held when she was capable of returning to work after suffering a workplace injury. This amounted to unlawful discrimination based solely on an injury that arose from her employment, she contended, and any argument that the company filled the position for business reasons was pretextual. In response, Coca-Cola asserted that its failure to reinstate Josue to her former position had nothing to do with her work injury, but rather was the result of the company filling the position more than four months prior to when Josue was medically released to return to work. Additionally, Coca-Cola argued, nothing in the language or legislative history of HRS § 378-32(2) required it to keep Josue's position vacant indefinitely or return her to her same position after she was medically cleared to work.

On August 1, 2011, the hearing officer issued a Recommended Decision stating that Coca-Cola's failure to return Josue to her position was contrary to the purpose of HRS § 378-32(2). The hearing officer determined that the statute did not require Coca-Cola to keep Josue's position open indefinitely, but it did make it unlawful "for an employer to discriminate against an employee in conditions or terms of employment when the employee has been released to return to work full duty, no restrictions to the position occupied at the time of the work

6

injury." Because Coca-Cola knew or should have known that Josue would one day be able to return to work without restrictions, the hearing officer concluded, the company should have filled her position with a temporary replacement that was subject to her right to return. Thus, the hearing officer determined that Coca-Cola discriminated against Josue solely because of a compensable work injury in violation of HRS § 378-32(2) and recommended that Josue be returned to the position that she held before suffering her injury.

## 2. Director

Coca-Cola appealed the Recommended Decision to the Director of the Hawaiʻi Department of Labor and Industrial Relations (the Director). Coca-Cola again argued that the plain language of HRS § 378-32(2) did not prevent it from hiring a replacement nor did it require the company to return Josue to her pre-work related injury position. Specifically, Coca-Cola argued that the "[s]olely because" language in the statute meant that the work injury must be the only reason for the employment action, and here the reason for not reinstating Josue was that a replacement was hired due to the business hardship inherent in requiring other employees to perform the duties of the position while Josue was absent. (Citing Fergerstrom v. Datapoint Corp., 680 F. Supp. 1456, 1459 (D. Haw. 1988).) Thus, Coca-Cola concluded, the Recommended Decision was clearly erroneous because the company's failure to return Josue to her prior

position was motivated by legitimate, business concerns.

The Director, in his Decision and Order, noted that when the legislature added the term "discriminate" to HRS § 378-32(2) in 1981, it made unlawful the practice of reassigning an employee to a position with other duties at a lower rate of pay after the injured employee returned to work.  (Citing S. Stand. Comm. Rep. No. 782, in 1981 Senate Journal, at 1249.)  Here, the Director stated, Josue was not returned to her pre-injury position, but instead was offered other positions that were either downgrades or positions for which Josue did not meet the requirements.  The Director agreed with the hearing officer that although Coca-Cola should not be required to hold Josue's position open indefinitely, it could have satisfied its business concerns by filling the position with a temporary employee.  By instead hiring a permanent employee to fill Josue's position, the Director determined, Coca-Cola became unable to return Josue to her pre-injury position "solely because she suffered a work injury in violation of section 378-32."  The Director's Decision and Order thus adopted the hearing officer's Recommended Decision that Coca-Cola discriminated against Josue solely because of her work injury when it failed to return her to the position that she held at the time of her injury.

### B. Circuit Court Proceedings

Coca-Cola appealed the Director's Decision and Order to the Circuit Court of the First Circuit (circuit court) and

argued that it was improper for the Director to rely on legislative history because the language of the statute was unambiguous.[4]  But even if reliance on the legislative history was proper, Coca-Cola asserted, it did not support the conclusion that refusing to terminate a replacement employee to open the injured employee's position is discrimination.  In response, Josue contended that the purpose of the statute is to protect employees from retaliatory discharge, and therefore the Director's decision comported with the text and purpose of the statute.  (Citing Purchert v. Agsalud, 67 Haw. 25, 35, 677 P.2d 449, 457 (1984).)  The Department also responded to Coca-Cola, arguing that the Director did not err in concluding that Coca-Cola discriminated against Josue because the company's hiring of a permanent replacement was not an independent, non-discriminatory, and lawful reason for its refusal to return Josue to her pre-injury position.

The circuit court determined that there was no dispute that Josue was discriminated against.  The court found, however, that the discrimination "was not because of a work-related injury, but it was because the position had been filled."  In addition, the court stated that "to only look at the [legislative history] without looking at any references as to

---

[4]     The Honorable Rhonda A. Nishimura presided.

what constitutes discrimination is . . . untenable." The court therefore concluded that Coca-Cola did not violate HRS § 378-32(2). Accordingly, the court reversed the Director's decision.

## C. ICA Proceedings

Josue and the Department each appealed the circuit court decision to the Intermediate Court of Appeals (ICA). Josue argued that Coca-Cola's interpretation of the "[s]olely because" clause was incorrect because it could have satisfied its operational concerns by filling the position with a replacement that was subject to Josue's right to return. Similarly, the Department argued that although Coca-Cola cited operational hardship as the reason for filling Josue's position, it produced no evidence as to why it could not temporarily, rather than permanently, have filled Josue's position. Coca-Cola responded that it did not discriminate "[s]olely because" of Josue's work injury because it filled Josue's position due to "operation concerns" and therefore the circuit court did not err. (Quoting Fergerstrom, 680 F. Supp. at 1458.)

In a memorandum opinion, the ICA affirmed the circuit court's decision that Coca-Cola's actions did not violate HRS § 378-32(2).[5] Although the court determined that Coca-Cola

---

[5] The ICA's memorandum opinion may be found at BCI Coca-Cola Bottling Company of Los Angeles v. Hoshijo, No.CAAP-0001135, 2018 WL 4659561 (Haw. App. Sept. 28, 2018).

10

discriminated against Josue, the ICA stated that the term "[s]olely" was unambiguous and that a violation of HRS § 378-32(2) clearly requires that the work injury be the sole cause of the adverse employment action to run afoul of the statute.  The ICA held that the Director's conclusion that Coca-Cola discriminated against Josue "[s]olely because" of her work injury was clearly erroneous because Josue's absence was creating a hardship for the company by requiring two other supervisors to work extra hours to perform Josue's job duties.  The ICA thus concluded that "business necessity was also a reason for [Coca-Cola's] actions and there was no indication that the justification was pretextual."

## II. STANDARD OF REVIEW

We review findings of facts and mixed questions of law and fact under the "clearly erroneous" standard and we review conclusions of law de novo "to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law."  In re Water Use Permit Applications, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000) (quoting Curtis v. Bd. of Appeals, 90 Hawaiʻi 384, 392-93, 978 P.2d 822, 830-31 (1999)); Price v. Zoning Bd. of City & Cty. of Honolulu, 77 Hawaiʻi 168, 172, 883 P.2d 629, 633 (1994).  A finding of fact is clearly erroneous when "(1) the record lacks

11

substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." In re Water Use Permit Applications, 94 Hawaiʻi at 119, 9 P.3d at 431.

### III. DISCUSSION

### A. Coca-Cola Discriminated Against Josue

Under HRS § 378-32(2), it is unlawful for an employer "to suspend, discharge, or discriminate against any of the employer's employees . . . [s]olely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer." Unlike the terms "suspend" and "discharge," which denote specific employment-related actions, it is unclear on the face of the statute what type of employer action constitutes discrimination in this context.[6] The term "discrimination" is not included in the applicable definitions provided in HRS § 378-31 (1993), and the Department has not issued any regulations providing guidance on how to interpret the term.[7] Because the term "discriminate" is

---

[6] According to Black's Law Dictionary, "discrimination" generally means "a failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." Black's Law Dictionary 566 (10th ed. 2014).

[7] Chapter 378 addresses discriminatory employment practices generally and provides enumerated examples of other forms of discrimination. For example, HRS § 378-2 (1993 & Supp. 1995) provides that various employment decisions amount to unlawful discriminatory acts when made on the basis of

(continued . . .)

not defined and because the statute is not clear as to what form of employer action amounts to discrimination on the basis of a work injury, an ambiguity exists regarding the meaning of the term. When such ambiguity exists, "the meaning of the ambiguous word[] may be sought by . . . resort[ing] to extrinsic aides in determining legislative intent" such as the legislative history of the statute. Gillan v. Gov't Emps. Ins. Co., 119 Hawaiʻi 109, 124-25, 194 P.3d 1071, 1086-87 (2008) (quoting State v. Toyomura, 80 Hawaiʻi 8, 19, 904 P.2d 893, 904 (1995)).

Prior to 1981, HRS § 378-32(2) did not contain the term "discriminate," but instead provided that "[i]t shall be unlawful for any employer to suspend or discharge any of his employees . . . [s]olely because the employee suffered a work injury."[8] 1970 Haw. Sess. Laws Act 64, § 2 at 121. In 1981, the

---

(. . . continued)

race, sex, religion, or other protected characteristic, including "to refuse to hire or employ or to bar or discharge from employment"; "to fail or refuse to refer to employment"; and "to exclude or otherwise deny equal jobs or benefits to a qualified individual." HRS §§ 378-2(1)(A), 378-2(1)(B), 378-2(6). The chapter does not contain a similar detailed enumeration of employment actions that constitute discrimination on the basis of work injury.

[8] This provision was originally codified in the worker's compensation statute, but in 1970 the legislature moved the provision into the title of the HRS relating to the Department of Labor and Industrial Relations. H. Stand. Comm. Rep. No. 253-70, in 1970 House Journal, at 859. The statute was moved because the legislature recognized that it was "inappropriately part of the Workmen's Compensation Law" which was "neither concerned with nor staffed to carry on an enforcement program, while the [Department of Labor and Industrial Relations] is structured so as to implement the policy and purpose of the law." Id.

legislature amended the statute by adding discrimination to types of conduct that are prohibited when undertaken solely because of an employee's injury.  See 1981 Haw. Sess. Laws Act 10, § 1 at 29.  The purpose of this amendment was explained in both a House and Senate Standing Committee report as follows:

> The purpose of this bill is to specify discrimination as an unlawful employment practice and to specifically allow the Department of Labor and Industrial Relations to order reinstatement to the prior position of an employee discharged in violation of section 378-32, Hawaii Revised Statutes.
>
> Current law prohibits suspension or discharge of an employee who has suffered from a work injury or has filed for bankruptcy or because the employer was summoned as a garnishee.  However, an employee can be downgraded, reassigned to other duties at a lower rate of pay, or otherwise be discriminated against in conditions or terms of employment under the above circumstances without violating the law.  This bill provides further protection to the employee in such cases by making such discrimination unlawful.

S. Stand. Comm. Rep. No. 782, in 1981 Senate Journal, at 1249 (emphasis added); accord H. Stand. Comm. Rep. No. 580, in 1981 House Journal, at 1179.  These committee reports demonstrate that the addition of discrimination as an unlawful act sought to address a loophole in the statute that allowed an employer to "downgrade" or "reassign[]" an employee "to other duties at a lower rate of pay" after the employee "has suffered from a work injury."  Thus, the legislative history indicates that the intent of the statute is to protect employees that have suffered work injuries from adverse employment action by preserving the employee's position until the employee is able to return to work

or by placing the employee in a comparable position upon the employee's return.

It is undisputed that Josue suffered a work injury and was placed on a leave of absence pursuant to Coca-Cola's disability leave policy.  It is also uncontroverted that Coca-Cola did not reinstate Josue to a position equivalent to or better than her pre-injury position upon her return to work after the injury, but instead the company offered her only positions that she either could not perform or that amounted to downgrades from her prior employment.  Such a decision is the precise kind of adverse employment action that prompted the legislature to specifically add the term "discriminate" to HRS § 378-32(2) to prohibit.[9]  See S. Stand. Comm. Rep. No. 782, in

---

[9]     The briefing before the ICA and the ICA's Memorandum Opinion addressed the issue of whether Josue's complaint was timely, which turned on when the alleged discrimination occurred.  Although the issue of timeliness is not directly raised before us, we must nonetheless decide what action actually constituted discrimination under HRS § 378-32(2) to resolve this case.  The discrimination necessarily occurred on the day that Josue returned--and not when the company hired a permanent replacement--because that is when the employment action adversely affected Josue.  Indeed, had Coca-Cola discharged the employee that was hired to replace Josue or offered Josue a position that was at least equivalent to her pre-injury position when she returned to work, no discrimination would have occurred.

Further, HRS § 378-32(2) contained a limited exception that allows an employer to "suspend, discharge, or discriminate against" an employee "[s]olely because the employee has suffered a work injury" if "the employee is no longer capable of performing the employee's work as a result of the work injury and the employer has no other available work which the employee is capable of performing."  If the discriminatory behavior prohibited by HRS § 378-32(2) was found to occur when an employer makes an adverse employment decision rather than when the decision adversely affects the employee, it would incentivize employers to make adverse employment decisions as quickly as possible after a work injury occurs.  Under such a formulation, the employer would be able to bypass the protections afforded by the statute if the still-healing injury rendered the employee incapable of

(continued . . .)

1981 Senate Journal, at 1249; H. Stand. Comm. Rep. No. 580, in 1981 House Journal, at 1179. Thus, Coca-Cola's actions in this case constituted discrimination under HRS § 378-32(2), and this case instead turns on whether the discrimination was undertaken "[s]olely" on the basis of Josue's work injury.[10]

---

(. . . continued)

performing the employee's preinjury duties or those of an equivalent or better position at the time the adverse employment decision was made, regardless of whether the employee would eventually regain a full capacity for work. Thus, the employment action must be evaluated from the point at which the employee is denied reinstatement to an equivalent or better position upon returning to work in order to effectuate HRS § 378-32(2)'s purpose of protecting employees who are injured during the course of their work. In the present case, it is undisputed that Josue's doctor medically cleared her to work without restriction prior to the alleged discrimination.

[10] During oral argument, Coca-Cola contended that it did not discriminate against Josue under HRS § 378-32(2) because it was properly following the "reasonable accommodation" procedures mandated by the Americans with Disabilities Act (ADA). Oral Argument, BCI Coca-Cola Bottling Company of Los Angeles v. Murakami (SCWC-14-0001135) at 01:00:45-01:01:07, http://oaoa.hawaii.gov/jud/oa/19/SCOA_041019_SCWC-14-1135.mp3. This argument was raised before the Director and the circuit court but was not raised before the hearing officer, ICA, or before this court prior to oral argument. Even if this argument were properly before us, it is inapt here. Coca-Cola's requirements under federal law are wholly separate from its requirements under HRS § 378-32(2), and Coca-Cola's compliance with the ADA does not abdicate its legal duty to comply with HRS § 378-32(2). Nor does the ADA preempt HRS § 378-32(2) because the two statutes do not conflict. See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992). Under the regulations implementing the ADA, it is unlawful for an employer "not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified . . . employee with a disability," and such an accommodation includes "[j]ob restructuring" and "reassignment to a vacant position." 29 C.F.R. §§ 1630.9(a), 1630.2(o)(2)(ii). An employer can fulfill its federal requirements while fulfilling its requirements under HRS § 378-32(2) because, as explained, the Hawai'i statute does not prohibit an employer from reassigning an employee to a position that is not a downgrade.

## B. In the Absence of True Business Necessity, Discrimination for Business Reasons is Discrimination "Solely Because" of a Work Injury

Determining that Coca-Cola discriminated against Josue does not end the inquiry of whether the company violated HRS § 378-32(2) because the statute only prohibits discrimination when it is done "[s]olely because the employee has suffered a work injury." That is, an employer does not violate the statute if it discriminates against an employee for a legitimate reason other than the employee's work injury. However, HRS § 378-32(2), like other statutes prohibiting discrimination, "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 26 n.29, 346 P.3d 70, 95 n.29 (2015) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)) (analogizing discrimination under HRS § 378-2, which prohibits discrimination on the basis of race, sex, and other protected characteristics, to discrimination under Title VII of the Civil Rights Act of 1965)).

In Adams, we explained that if an employer's discriminatory action "cannot be shown to be related to" a legitimate reason such as "job performance, the practice is prohibited." Id. (emphasis omitted). Accordingly, "[a] 'legitimate' reason must be one that is justifiable in view of

the purpose of the [statute.]"[11]  Id. at 15, 346 P.3d at 84 (quoting Hill v. Miss. State Emp't Serv., 918 F.2d 1233, 1243-44 (5th Cir. 1990) (Rubin, J., dissenting) (second alteration in original)).

HRS § 378-32(2) was enacted specifically to protect a vulnerable subset of employees--those who suffer work injuries--by ensuring that they are restored to their position or placed in a commensurate position when they return from a work-related injury.[12]  S. Stand. Comm. Rep. No. 782, in 1981 Senate Journal, at 1249; H. Stand. Comm. Rep. No. 580, in 1981 House Journal, at 1179.  Indeed, this court has explained that "the legislative intent of HRS § 378-32(2) is to protect [employees]," Puchert v. Agsalud, 67 Haw. 25, 36, 677 P.2d 449, 457 (1984), from discharge, suspension, and discrimination in relation to the employee's compensable work injury.  Takaki v. Allied Machinery Corp., 87 Hawaiʻi 57, 64, 951 P.2d 507, 514 (App. 1998); see also Hummel v. Kamehameha Schs./Bernice Pauahi Bishop Estate, 749 F.

---

[11]  "Legitimate" is defined by Black's Law Dictionary as "lawful" or "genuine."  Black's Law Dictionary 1040 (10th ed. 2014).

[12]  In its current form, HRS § 378-32 also protects employees from being suspended, discharged, discriminated against, and demoted in several other circumstances.  The statute provides that an employee will not be penalized as a direct consequence of filing a petition against an employer for wages, testifying or being subpoenaed to testify in a discrimination proceeding, testing positive for the presence of drugs or alcohol in a "substance abuse on-site screening test," or using available sick leave.  HRS § 378-32(a)(1)-(4), (b) (2015).

Supp. 1023, 1027 (D. Haw. 1990) ("The purpose of HRS § 378-32(2) is to protect [employees.]").

In light of this purpose, for an employer to demonstrate a "legitimate reason" for a discriminatory employment action that was allegedly based on the needs of the business, an employer must first adduce evidence that, at the time the position was filled, the vacancy at issue impaired the employer's business operations. Adams, 135 Hawaiʻi at 26 n.29, 346 P.3d at 95 n.29 (explaining that when evaluating whether a discriminatory employment action is related to a legitimate reason, "[t]he touchstone is business necessity."); see also Frank's Shoe Store v. W. Va. Human Rights Comm'n, 365 S.E.2d 251, 258 n.3 (W. Va. 1986) (rejecting an employer's contention that its action of downgrading an employee because she became pregnant was "necessary for efficient operations of the business" because there was no "impair[ment of] business operations"). This burden falls on the employer because, as a practical matter, only the employer would possess all the information necessary to demonstrate a business impairment. See Frank v. Am. Freight Sys., Inc., 398 N.W.2d 797, 802 (Iowa 1987) ("[T]he burden of showing a business necessity for the discrimination is upon the [] employer.").

Additionally, to demonstrate a legitimate reason for the adverse employment action, the employer must produce

evidence that the proffered justification for the action was the only reasonable means by which to remedy the employer's business impairment.[13]  See Smith v. City of Jackson, 544 U.S. 228, 243 (2005) (noting that the "business necessity" test requires a showing that "there are [no] other ways for the employer to achieve its goals that do not result in" discrimination).  When reasonable alternative methods of relieving the business impairment exist that do not involve taking adverse employment action against the injured employee, HRS § 378-32(2) obliges an employer to use one of these means rather than discriminating.  Otherwise, an employee would be subject to a demotion or other adverse employment action despite the employee's value to the business--as shown by the business impairment caused by the employee's absence--solely because the employee had the misfortune of becoming injured as a result of the job.  Such an outcome would provide no real protection to employees and would contravene the purpose of the statute.  Accordingly, an employer must prove that there were no feasible alternatives to the discriminatory employment action.[14]

---

[13]   As with demonstrating a business impairment, the employer is best situated to produce the business information necessary to justify its decision, and the burden of demonstrating a lack of reasonable alternatives must thus fall upon the employer.  Placing the burden on the employee would not only be burdensome, but it would also likely involve extensive discovery that could lead to protracted and contentious litigation.

[14]   Federal courts utilize similar principles under federal employment discrimination law.  See Ricci v. DeStefano, 557 U.S. 557, 578

(continued . . .)

Identifying a business impairment and determining whether it could have been alleviated through the use of a feasible alternative is a fact-bound inquiry that will vary based on the circumstances of the case. For example, a necessary consideration will often be the employer's knowledge of the anticipated length of the injured employee's absence. When an employer who is suffering a business impairment from an employee's absence knows that the employee will return from injury-related leave in a matter of weeks or months, then filling the position with a temporary employee or having another employee cover the absent employee's duties may be a suitable alternative to filling it with a permanent employee. On the other hand, if an employer learns that the employee will be absent indefinitely or for an extended duration, then preserving the injured employee's right to return to the employee's

---

(. . . continued)

(2009) (explaining that the business necessity defense under the Civil Rights Act of 1964 may be defeated by a showing of "a legitimate alternative that would have resulted in less discrimination"); Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 658 (1989), superseded by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, as recognized in Raytheon Co. v. Hernandez, 540 U.S. 44 (2003) (holding that proof of a legitimate business justification requires "first, a consideration of the justifications an employer offers for his use of [its] practices; and second, the availability of alternative practices to achieve the same business ends, with less [discriminatory] impact"); Clady v. L.A. Cty., 770 F.2d 1421, 1428 (9th Cir. 1985) ("[T]he [employment decision] does not constitute a business necessity [when] an alternative selection device exists which would have comparable business utility and less adverse impact."); Blake v. City of L.A., 595 F.2d 1367, 1383 (9th Cir. 1979) (holding that "[e]ven if an employer meets his burden of demonstrating business necessity, Title VII plaintiffs may prevail if" there are "alternative selection devices [] available that would serve the employer's legitimate interests without discriminatory effects").

position or another position that is not a downgrade may not be feasible given the difficulties of covering the absent employee's duties for a prolonged or indefinite period.  Thus, the employer's knowledge of the anticipated length of an employee's absence is often critical in the employer's evaluation of reasonable alternatives.  Specific alternatives, depending on the circumstances, may include filling the vacant position with a temporary employee, having another employee or employees cover the duties of the position, or holding open an equivalent or better position that does not create a business impairment.  If any of these or another nondiscriminatory alternative is feasible, then the employer is required to utilize it rather than discriminating against the injured employee.[15]

In sum, an employer's alleged discriminatory employment action must be related to a legitimate reason for the adverse action, which the employer has the burden to prove.  An employer may demonstrate that its discriminatory employment action did not violate HRS § 378-32(2) by presenting evidence to show that the vacancy caused operational impairment to the business that justified filling the position at the time that it

---

[15] In enacting HRS § 378-32(2), the legislature recognized that small businesses may be more significantly affected by the absence of an injured employee.  The legislature addressed this situation by providing that the subsection "shall not apply to an employer in whose employment there are less than three employees at the time of the work injury."  HRS § 378-32(2).

was filled and that there was no feasible alternative to the adverse employment action that would have rectified the impairment.

## C. The Director's Decision Was Not Clearly Erroneous

As stated, we review findings of facts of an agency under the "clearly erroneous" standard. In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000). Thus, we will uphold the Director's findings of fact in the case unless "the record lacks substantial evidence to support the finding or determination" or we are otherwise "left with the definite and firm conviction that a mistake has been made." Id.

Here, the Director found that, after Josue suffered a work-related injury and while she was on an approved leave of absence, Coca-Cola filled her position without knowing whether Josue would be able to return to work. And when Josue did return to work without any restrictions, the company refused to reinstate her to her pre-injury position or an equivalent or better job that she could actually perform. Based on these facts, the Director concluded that Coca-Cola discriminated against Josue. Additionally, the Director concluded that Coca-Cola could have satisfied its business concerns and the requirements of HRS § 378-32(2) by filling the position with a temporary replacement that was subject to Josue's right to return to her position.

To demonstrate that it did not discriminate "[s]olely because" of Josue's work injury, Coca-Cola first needed to present evidence that Josue's vacancy caused a business impairment. A human resource manager for Coca-Cola testified that Josue's absence was creating a hardship for her department because other supervisors were being required to come to work two hours early to perform Josue's work duties in addition to their own. Yet there is no clear evidence in the record that the other supervisors did not wish to perform this work for additional compensation, that providing additional pay to the other supervisors posed a financial burden to the business, or that the arrangement was otherwise impairing Coca-Cola's business operations. The evidence is thus unclear as to whether business operations were being adversely affected by Josue's absence.

In any event, it is ultimately unnecessary for this court to decide whether Coca-Cola successfully established that Josue's absence was causing a business impairment in light of the Director's finding that feasible alternatives existed to Coca-Cola's hiring of a permanent replacement.[16] As explained,

---

[16] The ICA cited Fergerstrom v. Datapoint Corp., 680 F. Supp. 1456 (D. Haw. 1988), in support of its holding that Coca-Cola's decision was not "[s]olely because" of Josue's work injury. In Fergerstrom, an employee suffered a work injury and went on a leave of absence from work. Id. at 1457. Nine months later, while the employee was still on leave, the employer notified the employee that he had been "administratively terminated" because of the company's policy of terminating any employee who had been on a leave

(continued . . .)

to prove that it had a legitimate reason for its discrimination, Coca-Cola was required to demonstrate not only that Josue's absence resulted in a business impairment, but also that there were no feasible alternatives to remedy the impairment that would not preclude Josue's return to her position or its equivalent. Accordingly, Coca-Cola was required to prove that there were no feasible alternatives to hiring a permanent replacement that resulted in the denial of Josue's reinstatement. When the hearing officer asked what the company's process was to fill Josue's position, the manager responded that information about the decision-making process was privileged and confidential. Coca-Cola did not present any evidence as to why a temporary replacement or other alternative would not have sufficiently addressed Coca-Cola's business concerns.

---

(. . . continued)

of absence for more than ninety days. Id. The district court held that the termination did not violate HRS § 378-32(2) because the employee was terminated "by operation of the Administrative Discharge Policy, not solely because of his injury." Id. at 1458.

We disagree with the analysis applied by the Fergerstrom court. As explained, a discriminatory employment action must be related to a legitimate reason, which in this context is a business impairment. Adams, 135 Hawai'i at 26 n.29, 346 P.3d at 95 n.29 (quoting Griggs, 401 U.S. at 431). An employer's blanket administrative termination policy, whether of a duration of one day, ninety days, or a year, does not, on its own, demonstrate a business impairment. Instead, an employer must provide evidence, on a case-by-case basis, that the employee's absence caused a business impairment and that there were no feasible alternatives to the adverse employment action.

Indeed, the lack of evidence of the company's consideration of feasible alternatives is underscored by the fact that the company did not contact Josue until after it had filled her position with a permanent replacement.  Coca-Cola had no indication of whether Josue would be able to work without restrictions and, if so, the anticipated time frame when this would occur.  Under the circumstances, Coca-Cola could not have evaluated the feasibility of alternatives without this information.

Coca-Cola had the burden to prove that there was no feasible alternative to hiring a permanent replacement for Josue.  However, the record lacks any evidence that a temporary employee would not have been able to fulfill Josue's duties during her leave of absence due to her work-related injury--nor even that Coca-Cola considered the possibility.  The Director concluded that in light of the evidentiary record, a temporary employee could have addressed Coca-Cola's business concerns, and the company was thus not justified in discriminating against Josue in the manner it did.  There was substantial evidence in the record to support the conclusion that Coca-Cola failed to meet its burden to prove that there were no feasible alternatives to refusing to reinstate Josue to a position at least equivalent to the one she left because of her work

injury.[17]   Thus, the Director's findings were not clearly erroneous, and its conclusions of law were correct.  The Director's decision should have been affirmed, and it was error for the ICA to hold otherwise.

## IV. CONCLUSION

Based on the foregoing, we vacate the ICA's Judgment on Appeal, vacate the circuit court's judgment, affirm the Director's Decision and Order, and remand the case to the Director for any appropriate proceedings consistent with this opinion.

Ronald Fujiwara                      /s/ Mark E. Recktenwald
for petitioner
                                     /s/ Paula A. Nakayama
Adam S. Rosenberg
for respondents Scott Murakami,      /s/ Sabrina S. McKenna
Director of Department of Labor
and Industrial Relations, and       /s/ Richard W. Pollack
Department of Labor and
Industrial Relations                 /s/ Michael D. Wilson



Anna Elento-Sneed
for respondent BCI Coca-Cola
Bottling Company

Robert H. Thomas
Loren A. Seehase

---

[17]    During oral argument, the Department argued, for the first time, that Coca-Cola was required to keep Josue's position vacant until a medical determination about her ability to return to work was made under the worker's compensation statute.  Oral Argument, BCI Coca-Cola Bottling Company of Los Angeles v. Murakami (SCWC-14-0001135) at 00:23:00-00:23:20, http://oaoa.hawaii.gov/jud/oa/19/SCOA_041019_SCWC-14-1135.mp3.  Even if the argument was properly raised, however, it lacks merit because, as explained, an employer may fill the position with a permanent employee if the vacancy caused a business impairment and there were no feasible alternatives to utilizing a permanent replacement.

for amicus curiae
National Federation of
Independent Business Small
Business legal Center